Argued November 1, 1978, reversed and remanded
for new trial May 8, 1979

# KIRBY, *Appellant,*
*v.*
# SONVILLE, *Respondent.*
## (TC 94450, SC 25459)
594 P2d 818

Michael J. Gentry, of Tooze, Kerr, Peterson, Marshall & Shenker, Portland, argued the cause and filed a brief for appellant.

Walter H. Sweek, Portland, argued the cause for respondent. On the brief were Jay D. Enloe, and Vergeer, Roehr & Sweek, Portland.

LENT, J.

**LENT, J.**

This is an action for damages for personal injuries suffered by plaintiff as the result of a fall which occurred while he was helping defendant disconnect a pipe from a water pump. Plaintiff contends that his injuries were caused by negligence of the defendant. The trial court entered a judgment of involuntary nonsuit, and upon plaintiff's appeal we reverse and remand for trial.

Plaintiff alleges that he was "employed" by defendant to assist defendant in detaching certain plastic pipe from an irrigation pump located on a steep river bank on defendant's property. He alleges that while defendant and he were performing this work the pipe suddenly became uncoupled from the pump as a result of negligence of the defendant. The specific charges of negligence are as follows:

"1.  In directing and requiring plaintiff to pull the pipe from the pump connection;

"2.  In refusing to allow plaintiff to sever the pipe rather than to pull it loose;

"3.  In directing plaintiff to stand with his back toward the drop-off while removing the pipe;

"4.  In failing to provide plaintiff with a rope, support, or other safety device while removing the pipe;

"5. In pouring hot water over the pipe joint while directing plaintiff to pull on the pipe."

By her answer defendant admitted that while on defendant's premises, and in the process of detaching a plastic pipe from a pump located on the premises, plaintiff fell over the river bank. She denied, however, that plaintiff was "employed" to do the work and all other affirmative allegations of plaintiff's complaint. The defendant alleged that plaintiff had volunteered to assist defendant in removing the pipe as a favor to defendant and that in the process of removing the pipe, plaintiff himself was guilty of negligence in certain particulars, including, among others, "In

[341]

voluntarily assuming the risk involved in the operation." For a second affirmative defense, defendant charged that plaintiff "voluntarily assumed the risk involved in said operation." Defendant's affirmative allegations were put in issue by plaintiff's reply.

■ In an appeal from a judgment of involuntary nonsuit, we view the evidence in the light most favorable to plaintiff. Viewed in that light, the following facts are established by the evidence. Plaintiff was a handyman performing odd jobs when requested. He obtained jobs by performing tasks for people for whom he had performed similar tasks in the past and by word-of-mouth recommendation from such persons.

In August or September, 1974, defendant asked plaintiff to help her disconnect her irrigation pump and store it for the winter. Plaintiff had performed that work for defendant in the preceding year and had been paid for his work. Plaintiff expected to be paid on the same basis for assisting defendant in 1974; however, there was no specific discussion regarding price or payment for the work in 1974. Plaintiff had done other work for defendant on earlier occasions and sometimes when the jobs were small, there had been no discussion of price or payment until the job was completed. In such instances, plaintiff had charged defendant a "reasonable amount" when the work was completed.

The irrigation pump sat approximately four to five feet from the edge of a drop-off to the Molalla River. The pump was connected to a plastic intake pipe coming from the river and to a plastic outflow pipe leading to defendant's garden and lawn. Both pipes were clamped onto the pump with ring clamps.

In the prior year plaintiff had merely loosened the clamps and both hoses came off without difficulty. In the 1974 incident, however, both hoses were stuck tightly onto the nipples of the pump. Plaintiff first loosened the clamps and tried to pry each pipe loose with his screwdriver. Plaintiff also attempted to turn

the pump sideways to do the work but the intake and outflow pipes were rigid and prevented plaintiff from turning the pump.

Plaintiff suggested to defendant that plaintiff cut two or three inches from each plastic pipe and put a metal union on each pipe, explaining to defendant that this would make the work possible for her to do herself in ensuing years. Defendant rejected this suggestion, however.

Defendant then suggested that she would go to her house, procure hot water and bring it back to use in loosening the pipe. Defendant brought hot water to the scene of the work. Defendant then directed plaintiff to position himself on the river side of the pump to face the pump and to pull on the intake pipe while defendant poured hot water over the connection. The river bank had been partially eaten away since the prior year when plaintiff had dismantled the pump, making the pump sit closer to the edge than had been the case in 1973. Also, the bushes had grown up so as to somewhat obscure the ground between the pump and the river bank.

As plaintiff was kneeling facing the pump and positioned between the pump and the river bank, defendant poured hot water onto the pipe connection. Meanwhile, plaintiff was attempting to work the pipe loose from the pump. The pipe suddenly released and plaintiff fell backward over the drop-off and onto a rock ledge, suffering the injuries with which this case is concerned.

In defending the trial court's judgment, the defendant argues (1) that the law of "employer-employee" does not apply under this evidence; (2) that if the evidence does disclose an employment relationship the allegations of plaintiff's complaint give rise to no duty on the part of defendant in this situation; and (3) that even if there was a duty owed by defendant to plaintiff, there was no evidence of negligence on the

part of defendant. As an independent argument, defendant "suggests" that plaintiff is barred by implied assumption of the risk.

■ We turn first to the last point. The trial judge in part granted the nonsuit for the express reason that he found that plaintiff had assumed whatever risk was involved. By Oregon Laws 1975, ch 599, § 4(2), the doctrine of implied assumption of the risk was abolished. This section is now codified as ORS 18.475(2). Defendant has attempted to plead implied assumption of the risk, both as an allegation of contributory negligence on the part of the plaintiff and as an independent defense presumably urging in the latter instance that assumption of risk is used in its primary sense of a want of duty on the part of the defendant. *See Ritter v. Beals,* 225 Or 504, 358 P2d 1080 (1961); *Thompson v. Weaver,* 277 Or 299, 303, 560 P2d 620 (1977). The incident with which we are concerned in this case occurred in September, 1974, and the trial was held in 1977. The 1975 statute expressly provided that it governed all actions tried subsequent to its effective date, which was September 13, 1975. We held this provision to be valid in *Hall v. Northwest Outward Bound School,* 280 Or 655, 572 P2d 1007 (1977). We hold that implied assumption of the risk is not a proper basis for defeat of this plaintiff's claim, whether contemplated in the primary or secondary sense.

■■ It is usually helpful to analyze cases of this kind by determining what relationship exists between the parties, for the common law has established the nature and scope of duties owed by one person to another when they stand in certain recognized relationships to each other. That is not always the case, however, for in general one owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use

[344]

such care might result in such injury.[1] For example, if the actor, while walking along the beach, finds one of those long strings of kelp which resembles a bullwhip, picks it up and in play cracks it like a whip, he will most certainly be found to have been negligent toward the bystander whose eye is plucked from his head by the act even though no special relationship exists between the two.

■ In this case plaintiff's theory of the case, as set forth in his complaint, is that an "employment" relationship existed between himself and the defendant. One or more of the charges of negligence he has made against defendant in his complaint are cognizable in the eyes of the law with respect to that relationship. We hold, therefore, as hereinafter more fully discussed that the law of "employer-employee" does apply to this case. Because of the theory pleaded by plaintiff we need not decide whether plaintiff was entitled upon this evidence to go to the jury on the same basis as did the plaintiff in *Thompson v. Weaver, supra.*[2]

■ We find there is evidence from which the jury could find that the relationship of master and servant existed between these parties at the time plaintiff fell and was injured. It appears that in its inception the relationship was that of employer and independent contractor, *i.e.,* that defendant employed plaintiff to

---

[1] This is a description of duty. The standard of care is sometimes confused with the concept of duty. The standard of care is "reasonable care" or that care which persons of ordinary prudence exercise in all of their activities in order to avoid injury to others (or themselves for that matter). *See, for example, Shepler v. Weyerhaeuser Company,* 279 Or 477, 490, 569 P2d 1040, 1047 (1977).

[2] Because of plaintiff's theory espoused in his pleading that he was an employee of defendant, we do not decide whether his theory of recovery must be limited to establishment of an "employment" relationship. We do not reject, however, our dictum in *Thompson v. Weaver,* 277 Or 299, 301, 560 P2d 620 (1977):

"It is undisputed that the jury could find from the evidence that the work was done under defendant's direction and for his benefit, that his choice of procedure was needlessly dangerous, and that he had been told of safer ways to do the job. * * *"

accomplish a certain result, the removal of the pipes and the storing of the pump for the winter, with plaintiff to do so in the manner chosen by him. There is nothing to prevent the parties to such an agreement from changing it, however, so as to create a different relationship. Such a modification can be accomplished by the conduct of the parties as well as by specific words. Here the evidence shows that when plaintiff entered upon the task, defendant assumed *control of the manner* in which the task was to be performed and plaintiff acknowledged her right to do so by performing according to her directions. If the jury believes the course of events to be as that evidence tends to prove, the relationship is nothing other than master and servant. We, therefore, reject defendant's contention that the law of "employer-employee" does not apply to this case.

■■ It remains to consider defendant's contention that the allegations of plaintiff's complaint give rise to no duty on the part of defendant. In substance, this is the assertion of a general demurrer; moreover, it is an assertion made for the first time in this case. The trial court file does not reflect that a demurrer was ever filed. The defendant, in her oral motion for nonsuit and in the argument of her counsel in support of the motion for nonsuit, did not demur to the complaint. The closest defendant came to raising this point was to argue to the trial judge on the motion for nonsuit that the allegations of negligence were not actionable *unless* the relationship of employer and employee existed between defendant and plaintiff. Of course a defendant may demur generally for the first time upon appeal, and treating this contention as a general demurrer we overrule the demurrer by reason of our holding that there is sufficient evidence to establish the employer and employee relationship. It follows that the allegations are sufficient to allege a duty and breach thereof on the part of defendant as master. We regard defendant's argument in support of this contention in her brief mainly to be one that attempts to

demonstrate that plaintiff was equally as negligent as herself. This may well have been an end to the matter were we still operating under the rule of contributory negligence as an absolute bar to recovery, but we are not. ORS 18.470 et seq.

■ Finally, we consider defendant's contention that the evidence is insufficient to present a jury question as to whether defendant breached her duty as master in any particular charged. The judgment of nonsuit must be reversed if there was sufficient evidence on any one charge of negligence. *Allen v. The Heil Company,* 285 Or 109, 120, 589 P2d 1120 (1979). We need not consider which, if any, charges of negligence are not actionable or unsupported by the evidence, for that matter is not before us and the evidence upon retrial may be different. Whether particular charge(s) must be withdrawn from jury consideration will have to await the proper time and challenge upon retrial.

We pause to take note of what we have said in the seminal case of *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 469 P2d 783 (1970) on the issue of "what are the respective functions of the court and jury in passing upon the question of defendant's liability?" 255 Or at 606, 469 P2d at 785. In general, we there held that the court should intervene only when the actor's conduct "clearly meets the standard or clearly falls below it." We went on to say that liability upon the basis of negligence must be limited to those cases where the actor, as an "ordinary reasonable person" ought reasonably to foresee that his conduct will expose another to an unreasonable risk of harm. *Compare Mezyk v. National Repossessions,* 241 Or 333, 405 P2d 840 (1965), where we expressed the same idea in a slightly different manner. It is this element of blameworthiness subsumed in the concept of foreseeability which causes us to attach liability to that conduct which we call negligent. As in *Stewart,* the question before us is

> "* * * whether plaintiff's injury and the manner of its occurrence was so highly unusual that we can say

as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur. * * *" 255 Or at 609, 469 P2d at 786.

The answer here, as it was in *Stewart,* is that we cannot, although we concede that the question is undeniably a close one. *See, also, Jacobs v. Tidewater Barge Lines,* 277 Or 809, 562 P2d 545 (1977).

In accordance with this analysis we find that there is sufficient evidence to submit the case to the jury on one or more of the charges of negligence.

Reversed and remanded for a new trial.