808 P.2d 401

William SLADE and Diane Slade, husband and wife, as the parents and sole surviving heirs of Scott Slade, deceased, and William Slade, as the Personal Representative of the Estate of Scott Slade, deceased, Plaintiffs–Appellants,

v.

SMITH'S MANAGEMENT CORPORATION, a Utah corporation, Smith's Employees Association, an unincorporated group and Does 1–100, Donald Westfall and Jane Doe Westfall, husband and wife, as individuals and as presumptive co-owners of the vehicle driven by Donald Westfall; and Does 1–100, Defendants–Respondents.

and

Smith's Food King Properties, Inc., a Utah corporation, Defendants.

No. 16920.

Supreme Court of Idaho,
Boise, December 1989 Term.

March 25, 1991.

order of the district court, by the county in which the application is filed.

Hyde, Wetherell, Bray & Haff, Boise, for plaintiffs-appellants. Michael E. Wetherell, argued.

Brady, Saetrum & Lerma, Chtd., Boise, for defendants-respondents. Kent V. Reynolds, argued.

BISTLINE, Justice.

Scott Slade, a single youth aged nineteen years, was fatally injured on being struck by a motor vehicle being operated by an intoxicated driver, defendant Donald Westfall. The accident occurred when Slade was walking during daylight hours on the graveled shoulder of Overland Road. Today this Court must decide whether the parents of Scott Slade will be allowed their day in court where they can put their case before a jury. In addition to damages sought for the loss of their son, the Slades seek to recover in excess of $11,000 for their expenditures in Scott Slade's hospital bills, doctor bills, other related medical bills and funeral expenses.

## I.

The district court in its Decision and Order first identified what was seen by it as the heart of the controversy presented by defendant's motion for summary judgment: The precise issue to be decided is whether one who is not a licensed vendor of alcohol is liable to a third party for serving alcoholic beverages to a person who subsequently causes the death of another while driving under the influence of the intoxicating beverages made available by the host. A helpful portrayal of the undisputed facts is presented in the district court's memorandum decision, of which the following are noteworthy and need to be kept in mind:

(1) Smith's Management, Inc., a Utah corporation provided alcoholic beverages for the employee's party.... The alcoholic beverages were available for anyone at the party who wanted any. Distribution was not supervised. There was no bartender in charge of distributing [dispensing] the alcohol.

(2) Smith's Management, Inc., supplied the liquor to increase employee morale and good feeling.

(3) The defendant, Donald Westfall, was an employee of Smith's Management, Inc. Mr. Westfall is an adult. Mr. Westfall consumed a number of beers and a wine cooler before he left the picnic with his wife, driving his pickup truck down Overland Road.

(4) He struck Scott Slade, age nineteen, who was walking on the gravel shoulder of Overland Road. The following day Scott Slade died of the massive injuries he suffered.

(5) For the purposes of this Motion, the defendants have conceded that Mr. Westfall was obviously intoxicated at the picnic and that the defendants were aware that he was.

(6) In addition to the beverages brought to the picnic by individual Smith's employees and association members, Hayden Beverage donated thirty cases of beer and ten cases of wine coolers for the picnic.

(7) The donation was obtained by Brent Kailing, district manager of Smith's Management Corporation. Affidavits of Brent Kailing and Cindy Simmons. R. 135–142.

(8) In the fifteen hours during which attempts were made to save Scott, his parents incurred over $8,000 in hospital

and related medical bills, and his funeral and burial costs were over $3,000. R. 96.

Westfall, the operator of the vehicle which killed Scott Slade, was an employee of Smith's Management Corporation (hereinafter Smith's Management). Smith's Management is in charge of the operation of Smith's Food King Stores. Westfall was on his way home from a party sponsored by Smith's Employees Association at which alcoholic beverages were provided at no cost to Smith's Management. The donated thirty cases of beer and ten cases of wine coolers were publicly displayed in open iced troughs; it was there for the taking. Some attendees brought their own beverages. The Slades contend that Westfall became intoxicated while at the party, as was evident from a blood alcohol test taken so shortly after the accident that Westfall would have had to have been obviously intoxicated when he drove his vehicle from the scene of the party and onto Overland Road.

The Slades' complaint named as defendants Smith's Food King Property, Inc., Smith's Management Corporation, Smith's Employees Association, various John Does, and Mr. and Mrs. Donald Westfall. Smith's Food King Properties, Inc., was later dismissed pursuant to stipulation between the parties. Defendants filed various motions for summary judgment. The district court ruled, regarding the motion of Smith's Management Corporation, that a cause of action does not lie against a nonlicensed vendor for distributing alcohol to an adult who was known to be obviously intoxicated when he entered his vehicle. The court also ruled that Westfall was not acting within the scope of his employment with Smith's Management Corporation and, therefore, no vicarious liability could be imputed to Smith's Management Corporation based upon the doctrine of *respondeat superior*. Summary judgments of dismissal were entered in favor of Smith's Management and Smith's Employees Asso-ciation, which judgments were certified for appeal pursuant to I.R.C.P. 54(b).

Appellants have presented various issues for consideration on appeal, including the "precise issue" as stated by the district court., *i.e.*, because Smith's Management was not a licensed vendor, could it be held liable for providing alcoholic beverages? That "precise issue" and two other issues are dispositive:

1. Whether the district court erred in granting summary judgment in favor of Smith's Management Corporation and Smith's Employees Association? Otherwise put, is there a genuine triable issue of material fact as to the issue of the defendants' negligence pursuant to the provisions of I.C. § 23–605, which prohibits the dispensing of alcohol to an intoxicated person?

2. Whether the negligence of Westfall, if any, may be imputed to Smith's Management Corporation under the doctrine of *respondeat superior?*

Preliminarily, it should be noted that the district court declared that the issue of allowing or precluding a jury from deciding liability was extremely close and was a difficult question. Nevertheless, the court determined that the defendants were entitled to summary judgment, but urged the parents to seek a further resolution in this Court. Tr., Vol. 1, 33. Also noted is that the district court was conversant with the applicable Idaho case law precedent which was then available. Accordingly, it is in order to examine that case law in the abstract prior to applying it to the circumstances of this case. Preliminarily, examination of the *Meade, Alegria,* and *Kinney* opinions will be made, and in discussing the trial court's decision and opinion, *Bergman* and *Fischer* will be examined.[1]

II.

*Alegria* is logically the first case to be analyzed. It overruled the *Meade* holding that there could be no liability placed on anyone for providing alcoholic beverages to

1. *Meade v. Freeman,* 93 Idaho 389, 462 P.2d 54 (1969); *Alegria v. Payonk,* 101 Idaho 617, 619 P.2d 135 (1980); *Kinney v. Smith,* 95 Idaho 328, 508 P.2d 1234 (1973); *Bergman v. Henry,* 115 Idaho 259, 766 P.2d 729 (1988); and *Fischer v. Cooper,* 116 Idaho 374, 775 P.2d 1216 (1989).

a driver of a motor vehicle. Justice Donaldson wrote the opinion for the Court. It is important to fully understand the factual scenario of that case, and to fully comprehend Justice Donaldson's accomplishment in bringing Idaho law out of the depths of outdated English common law and into the light of the twentieth century. The basic facts leading up to and causing Marie Alegria's death were well stated:

> On December 2, 1973, seventeen year old Lawrence Payonk consumed quantities of beer in taverns known as 'John's Barn' and 'The Office.' Later in the evening, while driving in an allegedly intoxicated condition, Payonk collided with a car in which Marie Alegria was a passenger. Mrs. Alegria was killed in the accident and her husband, Albert Alegria, was injured. Albert Alegria and the children of decedent filed suit against Payonk and the owners and employees of the two taverns for the injuries sustained by Mr. Alegria and for the death of Marie Alegria. The material allegations of plaintiffs' complaint are, in substance, that defendants sold, served and dispensed alcoholic beverages to Payonk, notwithstanding that defendants knew or should have known that Payonk was under the legal drinking age of nineteen years and knew that he was actually, apparently and obviously intoxicated at the time so served; that the auto collisions occurred as a result of the intoxication of Payonk, which intoxication resulted from consumption of the alcoholic beverages negligently served to him by defendants; and that the negligent acts of defendants were the actual and proximate cause of the death of decedent and the injuries and damages sustained by plaintiffs.

*Alegria v. Payonk*, 101 Idaho 617, 618, 619 P.2d 135, 136 (1980). Fleshing out those facts slightly, "John's Barn" is a tavern in Elmore County, as was also true of "The Office." The three owners of John's Barn were named as defendants, as were the two owners of The Office.

Justice Donaldson faced a formidable challenge. The district court's grant of summary judgment against the plaintiffs in *Alegria* was predicated on the 1969 Idaho case of *Meade v. Freeman*, 93 Idaho 389, 462 P.2d 54 (1969),[2] which the district court

---

**2.** Justice Donaldson and Judge Prather dissented from the *Meade* majority which held that no liability for injuries to an innocent person could be attached to defendant liquor-by-the-drink bar licensees who either personally or through employees served liquor to John Freeman, well-knowing or having good reason to know that Freeman upon leaving the premises would be driving his automobile upon the highway. The majority so held, notwithstanding its recognition of Idaho case precedent holding that violation of a statute (I.C. § 23–929) constituted negligence per se. *Meade*, 93 Idaho at 394, 462 P.2d at 59.

The dissenting opinion pointed out what the majority did not: "What this Court is really deciding is whether or not a plaintiff will have the opportunity to prove to a jury ... that the further sale of intoxicating liquor to a person who is already obviously, actually, and apparently intoxicated can be the proximate cause of ensuing injury caused by the acts of the intoxicated person." 93 Idaho at 395, 462 P.2d at 60. That choice of words was indeed appropriate— they were borrowed from I.C. § 23–929(2) as one definition of the class of those persons to whom licensees could not sell, deliver, or give any liquor.

In apparent anticipation of the arrival of a case involving the purveying of intoxicants by persons other than licensed vendors, Justice Donaldson and Judge Prather wrote further:

> Some complain of illogic in holding a licensed retailer of liquor to such a liability for selling to an intoxicated person and not exacting the same liability of a friend who might give the intoxicated person more liquor. Such illogical result need not follow. If the giving of more intoxicating liquor to one who is already intoxicated can be a contributing proximate cause of ensuing injury caused by the intoxicated person, *then the rule would apply to both the licensed and the unlicensed dispensers or furnishers* of intoxicating liquor. In view of the damage caused by intoxicated drivers upon the highways *there would seem to be sound public policy in holding to some degree of accountability those who wish to dispense liquor to intoxicated persons whether they be licensed retailers or generous friends.*

*Meade*, 93 Idaho at 401, 462 P.2d at 66 (emphasis added). In addition, their opinion clearly established as negligence per se the violation of any statute which had for its purpose the safety of travelers on the highway. The opinion pointed out that I.C. § 23–901 made the enhancement of safety the purpose of I.C. § 23–929:

> The restrictions, regulations, and provisions contained in this act are enacted by the legislature for the *protection,* health, welfare *and safety of the people* of the state of Idaho and

ruled "compelled the conclusion that as a matter of law the vending of intoxicants *cannot* be a proximate cause of damage to a third person and accordingly granted summary judgment against plaintiffs." *Alegria,* 101 Idaho at 618, 619 P.2d at 136 (emphasis added).

Justice Donaldson twice stated the issue. First he stated it thus:

> Construing the facts and all reasonable inferences from the evidence in favor of plaintiffs-appellants, as we must in reviewing an order of summary judgment entered in favor of defendants, *Mitchell v. Siqueiros,* 99 Idaho 396, 582 P.2d 1074 (1978), *the narrow issue presented is whether* in this state the *sale of alcoholic beverages* by a licensed vendor of such beverages *to an actually, apparently and obviously intoxicated person known to be a minor can be a contributing actual and proximate cause of the damage resulting to a third person from the subsequent negligent operation of an automobile* by such intoxicated minor, thereby giving rise to a cause of action against such vendor.

*Alegria,* 101 Idaho at 618, 619 P.2d at 136 (emphasis added). Following a discussion of *Meade v. Freeman* and other applicable law, largely Idaho case law precedent, including *Kinney v. Smith,* 95 Idaho 328, 508 P.2d 1234 (1973), in which this Court adopted the doctrine of negligent entrustment, Justice Donaldson stated the issue again:

> for the purpose of promoting and encouraging temperance in the use of alcoholic beverages within said state of Idaho. (Emphasis added.)

*Meade,* 93 Idaho at 403, 462 P.2d at 68 (emphasis in original opinion).

**3.** In one of his last opinions, Justice Donaldson mentioned both *Alegria* and *Kinney:*

> Plaintiffs' claim against Garden City is predicated upon negligent entrustment of an automobile. *See Kinney v. Smith,* 95 Idaho 328, 331 n. 1, 508 P.2d 1234, 1237 n. 1 (1973) (tort of negligent entrustment recognized).
>
> The 'negligent entrustment' tort approved in *Kinney* is a recognition of *the risk of injury which exists when two ingredients are combined[:] the automobile and an incompetent or incapacitated driver.* In *Kinney,* we said that

The 'negligent entrustment' tort approved in *Kinney* is a recognition of the risk of injury which exists when two ingredients are combined; the automobile and an incompetent or incapacitated driver. In *Kinney,* we said that a party may be liable for providing an intoxicated individual with an automobile. *The issue in this case is the converse, i.e., should a PARTY ever be held liable for providing the driver of **an automobile with intoxicants.***

*Alegria,* 101 Idaho at 620, 619 P.2d at 138 (emphasis added).[3]

Observed in the context of the entire opinion, it is clear that although the *Alegria* case involved the two licensed tavern operators selling intoxicants, Justice Donaldson was also well aware that intoxicants are not always sold, but sometimes are provided, dispensed, or in some manner put in the possession of some person whose state of incompetence or incapacitation mandated otherwise. Whether a glass of intoxicating beverage is placed in the possession of a friend for consumption, or in the possession of a customer also for consumption, makes no difference insofar as the law is concerned if the person to whom the beverage is provided is a driver having the possession of a motor vehicle and it is evident that he may drive it on a public highway. Hence, Justice Donaldson was careful to note that the precise issue in *Alegria* involved a seller furnishing intoxicants to a driver who on leaving the premises would be an operator of a vehicle upon

> a party may be liable for providing an intoxicated individual with an automobile. *Alegria v. Payonk,* 101 Idaho 617, 620, 619 P.2d 135, 138 (1980).
>
> In *Alegria, supra,* we held that liquor vendors who knowingly dispense alcoholic beverages to obviously intoxicated minors may be liable for injuries proximately caused by their conduct. *Id.* We recognized a general duty of care: '[O]ne owes the duty to every person in our society to use reasonable care to avoid injury to the other person *in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.' Id.,* at 619, 619 P.2d at 137 (emphasis in original), *quoting from Kirby v. Sonville,* 286 Or. 339, 594 P.2d 818, 821 (1979).

*Ransom v. City of Garden City,* 113 Idaho 202, 206, 743 P.2d 70, 74 (1987).

some road or highway, whereas the issue, given more general consideration, was whether not just a seller, but any party should ever be held liable for providing the driver of a motor vehicle with intoxicants.

It is seen that the law stated in *Alegria* was pointedly not confined to licensed vendors, but rather noticeably written with due regard for the recognition in *Kinney v. Smith*, 95 Idaho 328, 508 P.2d 1234 (1973), "of the risk of injury which exists when two ingredients are combined[:] the automobile and an incompetent or incapacitated driver." *Alegria*, 101 Idaho at 620, 619 P.2d at 138. In addition to the liability which could arise by virtue of statute, Justice Donaldson also addressed the applicability of plain, ordinary negligence relative to the providing of intoxicants to drivers who will be operating their vehicles on the streets and highways:

> The elements of common law negligence have been summarized as (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *Brizendine v. Nampa Meridian Irrigation Distr.*, 97 Idaho 580, 548 P.2d 80 (1976).

> In general, it is held that 'one owes the duty to every person in our society to use reasonable care to avoid injury to the other person *in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.*' (emphasis added) *Kirby v. Sonville*, 286 Or. 339, 594 P.2d 818, 821 (1979). And in *Harper v. Hoffman*, 95 Idaho 933, 523 P.2d 536 (1974), this Court stated:

> Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury. 95 Idaho at 935, 523 P.2d at 538, *quoting from Whitt v. Jarnagin*, 91 Idaho 181, 188, 418 P.2d 278, 285 (1966).

In determining whether such duty has been breached by the allegedly negligent party, his conduct is measured against that of an ordinarily prudent person acting under all the circumstances and conditions then existing. *Nagel v. Hammond*, 90 Idaho 96, 408 P.2d 468 (1965). *Alegria*, 101 Idaho at 619, 619 P.2d at 137. Applying that precept, the Court's opinion stated, as to the *Alegria* circumstances: "We perceive no justification for excusing the licensed vendor of intoxicants from the above general duty which each person owes all others in our society." *Id.* What the Court did in *Alegria* was to go so far as to give the plaintiffs the right to present their evidence to a jury. That is exactly the same relief which the plaintiffs seek in this case; they want to have a trial whereat they obtain the satisfaction of knowing that twelve jurors have determined whether they prevail or fail in their presentation. That is the basic tenet of the jury system. That which was stated by this Court in *Alegria* is equally applicable here:

> We are constrained to hold that, under the facts alleged at this stage of the proceedings, the question is not one of law but of fact, and should be resolved not by the court but the jury. It appears to this Court that if appellants are able to prove by a preponderance of the evidence that respondents knew or reasonably should have known that the intoxicated minor Payonk would operate an automobile upon leaving their establishment, in addition to proving the allegations of the complaint, a reasonable jury could conceivably find liability.

*Alegria*, 101 Idaho at 620, 619 P.2d at 138.

The scenario in *Kinney v. Smith*, 95 Idaho 328, 508 P.2d 1234 (1973), was somewhat different than in *Alegria*, because no intoxicants were involved. However, *Kinney* was also certainly similar in that there was a violation of a statute which resulted in a motor vehicle owner's liability for the negligent operation of her vehicle by another person. The plaintiffs in *Kinney* were allowed to try their case to a jury, which returned a verdict for them. For the loss of eleven-year-old Janice Lake, the jury awarded $35,000, and also awarded $1,500 in special and general damages for the

other injured passengers. The issue on appeal involved only the $35,000 award. The defendants claimed the right to pay only $20,000, which was then the limitation on recovery under the provisions of I.C. § 49–1404 (1988) where there was resultant injury and/or death to more than one person. The statutory law imputed a driver's negligence to the owner of the involved motor vehicle.

Making the case unusual, the defendants filed binding admissions which in part conceded the following:

3. That the collision occurred as a result of the negligence of Walter Gene Smith in the operation of the vehicle being driven by him, which negligence was a direct and proximate cause of any injuries or damages suffered by the plaintiffs as a result of the collision.

4. That Janice Lake was killed as a result of said collision.

5. That the vehicle being driven by Walter Gene Smith was at the time of the collision owned by Bessie Poulsen (formerly Bessie Poulsen Smith) and was at the time of the collision being driven by Walter Gene Smith with the consent and permission of Bessie Poulsen (formerly Bessie Poulsen Smith).

6. That the collision did not occur as a result of and was not proximately caused by the negligence on the part of the plaintiffs *or any of them.*

*Kinney,* 95 Idaho at 329, 508 P.2d at 1235 (emphasis added). The issue at trial was also somewhat out of the ordinary. Not satisfied with the limitation of damages recoverable by reason of the statutory imputation of the negligence of the driver (Smith) to the owner who loaned the car (Poulsen), the plaintiffs sought at trial to establish Poulsen's actual *negligence* in lending her car to Smith. The plaintiffs based this actual negligence allegation on Poulsen's having permitted Smith to operate the vehicle *knowing* that he was not an authorized driver, *i.e.,* knowing that his operator's license had been suspended. Idaho Code § 49–339 of the Motor Vehicle Code prohibited any person from knowingly permitting an unlicensed driver to have the use of the owner's vehicle.

Here again Justice Donaldson was confronted with a case of first impression in Idaho. The holding of the opinion which he authored was that:

In our view, I.C. § 49–339 is designed to protect other highway users from injuries caused by the negligence of unlicensed drivers. [citations omitted] Therefore, I.C. § 49–339 is applicable in this case. *In Idaho, the violation of an applicable statute constitutes negligence per se.*

*Kinney,* 95 Idaho at 331, 508 P.2d at 1237 (emphasis added) (citations omitted) (citing cases including driving in the wrong lane, and failure to set hand brake and turn wheels away from traffic). Because the trial court had erred in not submitting the issue of actual negligence to the jury, notwithstanding that it had been pleaded by the plaintiffs and controverted by the defendants, this Court left intact the jury's determination of damages, but remanded for a determination of whether Poulsen had been actually negligent in entrusting her vehicle to Smith. If so, defendants would be liable for the $35,000 set by the jury. If not, the statutory limitation of $20,000 would apply.

Justice Donaldson, the author of *Kinney,* was well aware that negligence *per se* arises for violations of statutes having for their purpose safety on the highways. Two such statutes are I.C. §§ 23–605 and 23–929, both of which are applicable in the case before us.

### III.

The district court granted summary judgment based, in part, upon its view that social host liability was not yet recognized in Idaho.[4] The court in making its ruling

---

4. The district court observed, however, that:
   Idaho recognizes a cause of action for third parties injured when an intoxicated minor has been served alcohol by a tavern owner who was aware that the customer was a minor and was intoxicated. It appears probable that Idaho may recognize a cause of action for a

did not have the benefit of our recent opinion in *Fischer v. Cooper*, 116 Idaho 374, 775 P.2d 1216 (1989). In *Fischer* we overturned a summary judgment granted to an unlicensed seller of alcohol operating a tavern under a lease agreement with its owner, who was also the record owner of the tavern's liquor license. In reversing the summary judgment in *Fischer*, we applied I.C. § 23–605:[5]

> Dispensing to drunk.—*Any person* who sells, *gives, or dispenses* any alcoholic or intoxicating liquor to another person who is intoxicated or apparently intoxicated shall be guilty of a misdemeanor.

(Emphasis added.) We noted that the statute was very broadly worded, incriminating *any person* giving, selling, or dispensing alcohol to another person, who is intoxicated, or appears to be so.

■ In Idaho it is well-settled law reaching far back in time that violation of a statute is negligence *per se*. *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983); *Kinney v. Smith*, 95 Idaho 328, 508 P.2d 1234 (1973); *Riley v. Larson*, 91 Idaho 831, 432 P.2d 775 (1967); *State v. Richardson*, 76 Idaho 9, 277 P.2d 272 (1954); *Brixey v. Craig*, 49 Idaho 319, 288 P. 152 (1930).

■ The effect of establishing negligence *per se* through violation of a statute is to conclusively establish the first two elements of a cause of action in negligence. Here, those elements include a duty to the plaintiff placed upon a dispenser of alcoholic beverages[6] and a breach of that duty. Thus these elements (duty and breach) are "taken away from the jury." *See Prosser and Keeton on Torts* 230 (5th ed.1984). Liability may become established upon proof that the violation of the statute caused the injuries of the plaintiff and the plaintiff's subsequent damages. *See Leliefeld*, 104 Idaho at 370, 659 P.2d at 124.

■ The district court, not having the benefit of *Fischer* and abiding by the thought that Idaho was not ready for social host liability, erred in ruling that there is no social host liability in this jurisdiction. The plaintiffs established as a triable issue that I.C. § 23–605 was violated, and that they were and are entitled to go to trial where the parties may introduce evidence, pro and con, as to causation and damages. *See Brixey v. Craig*, 49 Idaho 319, 324, 288 P. 152, 154 (1930) (violation of a statute is negligence *per se* and not merely *prima facie* evidence of negligence).

Reversal of the summary judgment is not inconsistent with the passage of I.C. § 23–808, which became effective April 3, 1986.[7] The statute was passed subsequent to the demise of Scott Slade and the accrual of the Slades' cause of action, but it is instructive as to legislative policy. The statute's stated purpose is to *limit* certain dram shop and social host liability. This limiting language necessarily recognized that dram shop and social host liability

---

tavern owner who dispenses alcohol to an obviously intoxicated adult.

R. 101. Justice Donaldson and Judge Prather in their *Meade* opinion had also forecasted a valid reason for so extending liability:

> If the giving of more intoxicating liquor to one who is already intoxicated can be a contributing proximate cause of ensuing injury caused by the intoxicated person, *then the rule would apply to both the licensed and the unlicensed dispensers or furnishers of intoxicating liquor.*

*Meade*, 93 Idaho at 401, 462 P.2d at 66 (emphasis added).

**5.** This statute was enacted by the 1939 legislature.

**6.** The word "dispenser" is broad enough in scope to include both sellers and givers, and generally any person who provides beverages to

another person is within the proscription of the legislature's I.C. § 23–605.

**7.** The majority opinion in *Meade*, in its concluding remarks, foreshadowed the advent of dram shop legislation:

> We are being asked to single out a particular type of business, which in every other aspect is legitimate and respectable, for the imposition of a liability otherwise unknown in the law. This, *for the purpose of alleviating a major social ill in this country, that of mixing the two ingredients—alcohol and automobile.* If such is to be done, it should be done by the legislature wherein all of the policy considerations can and should be carefully weighed and from which, per chance, liability of the type sought here will become a reality with the enactment of a dram shop act.

*Meade*, 93 Idaho at 395, 462 P.2d at 60 (emphasis added).

existed at the time the statute was passed; it would be patently absurd to limit non-existent liability. The legislature was very specific in choosing language which did to some extent limit such liability. It did so by precluding an action brought by an intoxicated driver, or brought by a passenger in an automobile being driven by an intoxicated driver, *see* I.C. § 23–808(4)(a)(b), and by imposing a 180–day notice-of-claim provision. I.C. § 23–808(5). However, the legislature was equally specific that there was no curtailment of the right to file an action for furnishing alcoholic beverages to a person below the legal age for consuming alcoholic beverages where doing so caused injury, death or damage. It also left intact the right to bring suit where alcoholic beverages were furnished to any intoxicated potential tortfeasor who was obviously intoxicated at the time the alcoholic beverages were sold or furnished, and who the purveyor knew or reasonably should have known was intoxicated and could be expected to be driving a motor vehicle. I.C. § 23–808(1), (3)(a), (b). Thus it is seen that the main premise of the *Alegria* decision was recognized and left intact.[8]

In addition, it is clear that I.C. § 23–605 was *not* worded so as to have application only to liquor-by-the-drink licensees. Prior to the time I.C. § 23–605 was enacted in 1939 (approved by the governor on March 10, 1939), there were no licensed vendors of liquor-by-the-drink in Idaho. There had been no licensed vendors of intoxicating beverages in Idaho since the effective date of the eighteenth amendment to the Constitution of the United States, January 29, 1919. The twenty-first amendment was a partial repeal of the eighteenth, which left it up to the states to go "wet" or "dry." Idaho stayed dry until 1939.

The licensing of premises was first provided for in the Session Laws of 1891, which was Idaho's first comprehensive act to regulate the sale of intoxicating liquors, three sections of which are pertinent:

SEC. 6. When any person so licensed shall be convicted of a violation of any of the provisions of this act, or of any of the penal statutes of this State relating to the sale of intoxicating liquors, or shall violate any of the conditions of said bond hereinbefore provided for, the board of county commissioners may, and it is hereby made their duty, to revoke such license; but *such revocation shall not be construed to discharge such licensee* or his sureties *for any damage sustained by*, or right accrued to, *any person prior to such revocation.*

. . . .

SEC. 11. The giving away of intoxicating liquor of any kind, or any other shift or device to evade the provisions of this act, shall be deemed and held to be an unlawful selling within the provisions of the same.

. . . .

SEC. 19. *It shall be unlawful for any person or persons to sell or give away any spirituous, vinous or malt liquors to a minor.* Any person violating this section is guilty of a misdemeanor.

1891 Idaho Sess.Laws. 35–38 (emphasis added). Following the dry years under the eighteenth amendment, the legislature passed an act which is now codified as I.C. § 23–929. As initially enacted in 1947, licensees, bartenders, employed agents, or servants of licensees were prohibited from selling, *delivering, or giving away liquor to any person* under the age of twenty-one years, or to any person *actually, apparently, or obviously intoxicated.* Its proscription also included habitual drunkards, interdicted persons, and Indians. 1947 Idaho Sess.Laws, ch. 274, § 27, 870.

The California Supreme Court, in *Coulter v. Superior Court of San Mateo Cty.*, 21 Cal.3d 144, 145 Cal.Rptr. 534, 577 P.2d 669 (1978), applying a substantially similar statute, arrived at the same conclusion we reach today. It will be noted that I.C.

---

**8.** Justice Donaldson and Judge Prather also saw that a voluntarily intoxicated driver and/or voluntary passenger of such a driver would *not* have a viable cause of action against the purvey-

or of intoxicating beverages, even if the alcohol was dispensed in violation of I.C. §§ 23–605 and 23–609.

§ 23–605 is almost identical to California's statute on the same subject (section 25602):

Before 1971, California case law had uniformly held that one who furnished alcoholic beverages to another person was not liable for damages resulting from the latter's intoxication. (*E.g., Cole v. Rush* (1955), 45 Cal.2d 345, 289 P.2d 450.) Our courts reasoned that 'it is the voluntary consumption, not the sale or gift, of intoxicating liquor which is the proximate cause of injury from its use....' (*Id.*, at p. 356, 289 P.2d at p. 457.) In *Vesely v. Sager* (1971), 5 Cal.3d 153, 95 Cal.Rptr. 623, 486 P.2d 151, however, we considered our earlier position and concluded that, *as to commercial vendors,* liability would be imposed in appropriate cases for injuries occasioned to third parties by the consumer of liquor. Examining more closely the proximate cause issue, we concluded in *Vesely* that '[I]t is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent.' (*Id.*, at p. 164, 95 Cal.Rptr. at p. 631, 486 P.2d at p. 159.)

Moreover, in *Vesely* we declared that the tavern-owner defendant owed a duty of reasonable care to members of the public by reason of a provision of the Business and Professions Code (all statutory references are to that code unless otherwise cited). We explained that because section 25602 was enacted to protect members of the general public from injuries to persons and damage to property resulting from the excessive use of intoxicating liquor, a presumption of negligence arises whenever its provisions are violated. (5 Cal.3d at pp. 164–165, 95

Cal.Rptr. 623, 486 P.2d 151; see Evid. Code § 669.)

*In Vesely, we further expressly reserved the question 'whether a noncommercial furnisher of alcoholic beverages may be subject to civil liability under section 25602....'* (5 Cal.3d at 157, 95 Cal.Rptr. at p. 625, 486 P.2d at 153.) *That question is now before us* and, although defendants herein urge us to confine application of the *Vesely* rule to commercial vendors, we see no reasonable or logical basis for doing so. As will appear, *section 25602 is not limited by its terms to persons who furnish liquor to others for profit.* Furthermore, well established *general negligence principles lead us to conclude, independently of statute, that a social host* or other noncommercial provider of alcoholic beverages *owes to the general public a duty to refuse to furnish such beverages to an obviously intoxicated person* if, under the circumstances, such person thereby constitutes a reasonably foreseeable danger or risk of injury to third persons. We examine more closely the statutory and common law bases for our conclusion.

### 1. *Business and Professions Code Section 25602*

Section 25602 provides, that '*Every person* who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to ... any obviously intoxicated person is guilty of a misdemeanor.' (Italics added.) *Referring as it does to 'every person,' the section on its face appears to apply to both commercial and noncommercial suppliers of alcoholic beverages.*[9]

. . . .

It has long been a fundamental principle of California law that a person is liable for the foreseeable injuries caused by his failure to exercise reasonable care. (*Rowland v. Christian* (1968), 69 Cal.2d

---

9. Idaho's statute is I.C. § 23–605. It provides: "*Any person* who sells, *gives,* or dispenses any alcoholic or intoxicating liquor to another person who is intoxicated or apparently intoxicated shall be guilty of a misdemeanor." (Emphasis added.) The statute has remained unaltered since enactment over half a century ago.

108, 112, 70 Cal.Rptr. 97, 443 P.2d 561; *Dillon v. Legg* (1968) 68 Cal.2d 728, 739, 69 Cal.Rptr. 72, 441 P.2d 912; see Civ. Code, § 1714.) Although we have, on occasion, described the foregoing rule as having civil rather than common law origins (*Rowland, supra,* 69 Cal.2d at p. 112, 70 Cal.Rptr. 97, 443 P.2d 561), the principle has most frequently been expressed in the negligence formulation that the defendant owes the plaintiff a 'duty' of reasonable care. The existence of a duty is primarily a question of law, and dependent upon a variety of relevant factors, of which 'foreseeability of the risk is a primary consideration....' (*Weirum v. RKO General, Inc.* (1975), 15 Cal.3d 40, 46, 123 Cal.Rptr. 468, 471 539 P.2d 36, 39.) We think it evident that the service of alcoholic beverages to an obviously intoxicated person by one who knows that such intoxicated person intends to drive a motor vehicle creates a *reasonably foreseeable* risk of injury to those on the highway. (See *Vesely,* 5 Cal.3d at p. 164, 95 Cal.Rptr. 623, 486 P.2d 151.) Simply put, one who serves alcoholic beverages under such circumstances fails to exercise reasonable care.

We have previously identified certain factors other than foreseeability in determining the ultimate existence of a 'duty' to third persons. These factors include: '... the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (*Rowland v. Christian, supra,* 69 Cal.2d at p. 113, 70 Cal.Rptr. at p. 100, 443 P.2d at 564.)

Application of several of the *Rowland* elements to the circumstances herein alleged fully supports a rule establishing a duty of care and imposing civil liability. Plaintiffs' injuries are asserted to be substantial, a fact we must presume as a 'certainty' for purpose of reviewing the sufficiency of the complaint under well established pleading rules. Where such circumstances exist, as are herein alleged, it is not difficult to discern a close connection between defendant's conduct and the injury suffered by plaintiffs. (*E.g., Alcorn v. Anbro Engineering, Inc.* (1970), 2 Cal.3d 493, 496, 86 Cal.Rptr. 88, 468 P.2d 216.) Unquestionably, as we amplify below, there exists a strong public policy to prevent future injuries of this nature, and we may assume that insurance coverages (doubtless increasingly costly) will be made available to protect the social host from civil liability in this situation. While, traditionally, no moral blame attaches to the social host who entertains his guests by serving cocktails to them, it is not unfair to ascribe such blame to anyone who increases the obvious intoxication of a guest under conditions involving a reasonably foreseeable risk of harm to others. In this connection, we further note that *it is small comfort to the widow whose husband has been killed in an accident involving an intoxicated driver to learn that the driver received his drinks from a hospitable social host rather than by purchase at a bar. The danger of ultimate harm is as equally foreseeable to the reasonably perceptive host as to the bartender. The danger and risk to the potential victim on the highway is equally as great, regardless of the source of the liquor.*

*Finally, we do not conclude that the burden upon the noncommercial suppliers of intoxicating beverage and the consequences to the community of imposing civil liability are so serious as to justify a contrary holding.* Doubtless, the specter of civil liability may temper the spirit of conviviality at some social occasions, especially when reasonably observant hosts decline to serve further alcoholic beverages to those guests who are obviously intoxicated and perhaps becoming hostile. Nonetheless, *in this context, we must surely balance any resulting moderation of hospitality*

*with the serious hazard to the lives, limbs, and property of the public at large,* and the great potential for human suffering which attends the presence on the highways of intoxicated drivers. In doing so we need not ignore the appalling, perhaps incalculable, cost of torn and broken lives incident to alcohol abuse, in the area of automobile accidents alone.

The dimensions of this cost and its catastrophic personal and economic impact in terms of vehicular accidents, are profoundly disturbing social phenomena of our time. In the year 1976 there were 257,846 adult misdemeanor arrests for drunk driving reported in California. (Cal.Dept. of Justice, Crim. Justice Profile—1976 (1976) p. 25.) Considering the fact that this number, large as it is, represents *arrests only,* and does not include the marginal or undetected drivers who have imbibed, the figure may well represent only the tip of a statistical iceberg. For the year 1976, alcohol was described as the primary collision factor in 28.3 percent of all *fatal* motor vehicle accidents, and in 11 percent of *injury* accidents. (Dept. of Cal. Highway Patrol (1976) Ann.Rep. of Fatal and Injury Motor Vehicle Traffic Accidents, p. 68.) Nationally, 'alcohol has been associated with over half the deaths and major injuries suffered in automobile accidents each year.' (Coleman, Abnormal Psychology and Modern Life (5th ed. 1976) p. 414.) Children are not excluded from this numerical avalanche of intoxicated drivers. 'F.B.I. statistics show that more than 17,000 young people under 18, including 51 children, aged 10 or younger, were arrested for driving under the influence in 1975. The increase over 1970 is estimated at about 160 percent.' ((July 11, 1977) U.S. News and World Report, at p. 33.) In the light of the forgoing statistics, it seems readily apparent that, drained of all humor, the host's well intentioned offer of 'one more for the road' may frequently bear ominous and deadly overtones. We think, in short, that the policy of preventing future harm identified by us in *Rowland* is served by re-quiring the exercise of reasonable restraint by the social host under the circumstances herein presented.

*Coulter v. Superior Court of San Mateo Cty.,* 21 Cal.3d 144, 145 Cal.Rptr. 534, 536–40, 577 P.2d 669, 671–75 (1978) (emphasis added; footnote added).

Looking beyond the application of the two similar statutes of California and Idaho, we see that other courts also have imposed potential liability upon one who gives or furnishes alcohol to another based upon the general duty created by the common law. That duty is one owed to "every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." *Alegria v. Payonk,* 101 Idaho 617, 619, 619 P.2d 135, 137 (1980). This common law duty, in circumstances such as we address, now has been discussed and applied in *Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984); *Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity,* 258 Or. 632, 485 P.2d 18 (1971); *Halligan v. Pupo,* 37 Wash.App. 84, 678 P.2d 1295 (Ct.App. 1984); and *Dickinson v. Edwards,* 105 Wash.2d 457, 716 P.2d 814 (1986).

Indeed, we find it significant that in the seminal Idaho case of *Alegria v. Payonk,* 101 Idaho 617, 619 P.2d 135 (1980), the Court relied equally upon the duty of every person in our society to prevent foreseeable injuries to others and upon the duty created by statute. Today we do not create a new cause of action, but merely apply principles which were earlier established, beginning with *Alegria.* In *Alegria* this Court held that a licensed vendor of liquor could be liable for injuries to third parties resulting from the serving of a minor. In *Bergman v. Henry,* 115 Idaho 259, 766 P.2d 729 (1988), the Court held that a licensed vendor could be liable for third party injuries caused by serving an obviously intoxicated patron. *Fischer v. Cooper,* 116 Idaho 374, 775 P.2d 1216 (1989), held that an unlicensed person who serves an obviously intoxicated adult is potentially liable for injuries to third parties caused by that

intoxicated adult, and this potential liability was based in part upon the very broadly worded language of I.C. § 23–605 discussed above. Consistency and adherence to the teaching of those cases requires that we reverse the district judge's order granting the motion of Smith's Management Corporation and Smith's Employees Association for summary judgment. In so holding that there is a genuine triable fact as to the liability of both of those defendants, we go but one additional step beyond the earlier cases of *Alegria, Fischer,* and *Bergman,* noting that the activity of Smith's Management Corporation which makes it susceptible to civil action and potential liability is found, not in a strictly social host setting, but rather in participating with the Association in furnishing to the attendees substantial quantities of intoxicants without supervising distribution and consumption of the intoxicants.

## IV.

■ Next we consider whether the negligence, if any, of Westfall should be imputed to Smith's Management Corporation under the doctrine of *respondeat superior.* The trial court granted summary judgment to the defendants on this issue applying principles embodied in the Restatement of Agency 2d and applying factors contained in *Grant v. Brownfield's Orthopedic and Prosthetic,* 105 Idaho 542, 671 P.2d 455 (1983).

We note initially that the *Grant* case involved workers' compensation law. The relevant factors for determining whether an injury arises in the course and scope of employment for workers' compensation purposes are not necessarily the same factors which would determine whether an employee was acting within the scope of his employment for purposes of *respondeat superior* liability for injury to a third party. *See Castro v. State of California and County of Los Angeles,* 70 Cal.App.3d 156, 138 Cal.Rptr. 572 (1977); Comment, *Employer Liability for a Drunken Employee's Actions Following an Office Party: A Cause of Action Under Respondeat Superior,* 19 Cal.W.L.Rev. 107 (1982). We

also note that unless the evidence bearing on the question of whether one is acting within the scope of one's employment is susceptible of only one inference, upon considering a motion for summary judgment the question becomes peculiarly one for a jury to answer. *Van Vranken v. Fence-Craft,* 91 Idaho 742, 747–48, 430 P.2d 488, 493–94 (1967); *accord Chastain v. Litton Systems, Inc.,* 694 F.2d 957, 962–67 (4th Cir.1982) (applying North Carolina law); *see also Dickinson v. Edwards,* 105 Wash.2d 457, 716 P.2d 814 (1986).

The Washington Supreme Court has developed a useful approach to a plaintiff's *prima facie* case claiming application of the *respondeat superior* doctrine under circumstances similar to the facts before the court today. That court held that:

[A] plaintiff may recover from a banquet-hosting employer if the following *prima facie* case is proven:

1. The employee consumed alcohol at a party hosted by the employer which party was held to further the employer's interest in some way and at which the employee's presence was requested or impliedly or expressly required by the employer.

2. The employee negligently consumed alcohol to the point of intoxication when he knew *or should have known* [except for his state of intoxication] he ... [might be operating] a vehicle on some public highway upon leaving the banquet.

3. The employee caused the accident while driving from the banquet.

4. The proximate cause of the accident, the intoxication, occurred at the time the employee negligently consumed the alcohol.

5. Since this banquet was beneficial to the employer who impliedly or expressly required the employee's attendance, the employee negligently consumed this alcohol during the scope of his employment.

*Dickinson v. Edwards,* 716 P.2d at 820. *See also Harris v. Trojan Fireworks Co.,* 120 Cal.App.3d 157, 174 Cal.Rptr. 452, 456 (1981) ("Thus, we think it can be fairly said

that liability attaches where a nexus exists between the employment and the activity which results in an injury that is foreseeable.").

In this case the facts before the district court raised, at a minimum, a jury question whether the party was held to further the employer's interest and whether the employee's presence was specifically requested, or at least impliedly requested or implicitly expected by the employer. Management was noticeably present in the person of Mr. Kailing, who was a local manager of Smith's Management Corporation, and enough involved to also become a member of the Smith's Employees' Association. Construing the facts and all inferences reasonably drawn therefrom most favorably to the Slades, as the district court must in ruling on a defense motion for summary judgment, evidence was adduced that Smith's Management Corporation furnished free of charge a substantial nucleus of the alcoholic beverages which were consumed at the party and, also, that the party was held in part to improve Smith's employees' morale—as the district court worded it, "good feeling"—in relations among themselves. We can see no reason why the district court, in ruling on the defendants' summary judgment motions, did not consider that those employees who paid for and brought their own intoxicating beverages would be quick and aggressive at first attacking and consuming the substantial supply of free beer and wine coolers, while they lasted, before resorting to their own supplies. The court below erred in not allowing the plaintiffs to present their case to a jury.

The district court's judgment is reversed for the jury trial which was demanded by not just the plaintiffs, but also by both Smith's Management Corporation and Smith's Employees Association. Costs to appellants.

JOHNSON, J. concurs.

BOYLE, Justice, specially concurring.

The historical direction of the Court in dram shop or alcohol disbursement liability cases has been to expand the duty and responsibility for a commercial or liquor-by-the-drink vendor of alcoholic beverages. *Fischer v. Cooper*, 116 Idaho 374, 775 P.2d 1216 (1989); *Bergman v. Henry*, 115 Idaho 259, 766 P.2d 729 (1988); *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980).

Were the circumstances presented here truly a social-host situation, Idaho case law is clear and I would have no difficulty concluding there was no liability, and would affirm the granting of summary judgment. However, although this action does not involve a tavern or traditional vendor of liquor-by-the-drink, the facts arguably demonstrate that a distributor, an employee's association, and a retail grocery store with a wine and beer license, all participated in obtaining the alcoholic beverages which were distributed in an unsupervised and indiscriminate manner to all present at the employee's party. Under these circumstances there exists a duty of reasonable care provided negligence can be proven at trial.

As a result of enactment of I.C. § 23-808, cases occurring subsequent to the effective date of the legislation will be governed and controlled by the statute. However, under the facts of the instant case a common law duty exists during the period of time in which this action accrued.

BAKES, C.J. and McDEVITT, J. concur.

BISTLINE, Justice, concurring in part in the specially concurring opinion of Justice BOYLE.

When I wrote earlier in my opinion, "noting that the activity of Smith's Management Corporation which makes it susceptible to civil action and potential liability is found, not in a strictly social host setting, but rather in participating with the Association in furnishing to the attendees substantial quantities of intoxicants without supervising distribution and consumption of the intoxicants," it was believed that in my own peculiar language we were displaying our awareness that this was not "truly a social-host situation," as Justice Boyle has written. That our views coincide, al-

though not identically stated, is gratifying, and I am pleased to join his opinion in that respect.

JOHNSON, Justice, concurring.

I concur in Justice Bistline's concurrence in part in the specially concurring opinion of Justice Boyle.