■ CLAIRE M. Moss, Respondent, v ROY I. Moss, Appellant. —Yesawich Jr., J. P. Appeal from a judgment of the Supreme Court (Viscardi, J.) denying, *inter alia,* defendant a divorce, entered May 2, 1991 in Washington County, upon a decision of the court.

The parties, both of whom had previously been married, entered into an antenuptial agreement and were married in September 1984. In 1988, plaintiff commenced this action for divorce based on grounds of cruel and inhuman treatment and abandonment. Defendant answered and asserted counterclaims for divorce based on cruel and inhuman treatment,

abandonment and fraud. Additionally, he claimed that the antenuptial agreement was unenforceable because plaintiff breached that agreement by not fulfilling her marital vows.

A nonjury trial was held. At the close of plaintiff's case, Supreme Court dismissed the complaint and granted plaintiff's motion to dismiss the first and second counterclaims, grounded respectively on cruel and inhuman treatment and abandonment, because the pleadings were insufficient as a matter of law to establish either of those two bases for divorce. With respect to the third and fourth counterclaims, the court allowed defendant to present proof that the marriage was invalid because of fraud at its inception and that plaintiff had breached the antenuptial agreement. After the hearing concluded, Supreme Court determined that there was no merit to the fraud claim and that plaintiff had not breached the antenuptial agreement. A judgment dismissing the complaint and counterclaims was entered. Defendant appeals the dismissal of his counterclaims charging cruel and inhuman treatment and breach of the antenuptial agreement.

One who seeks a divorce on cruel and inhuman treatment grounds must allege that such conduct is harmful to the complainant's physical or mental health *(Brady v Brady,* 64 NY2d 339, 343). As to that, defendant alleges that his problems with plaintiff caused him "frustration", resulting in his developing colitis. However, to be sufficient to sustain a cause of action, the conduct must "so endanger[ ] [complainant's] physical or mental well-being as to make continued cohabitation unsafe or improper" *(Breckinridge v Breckinridge,* 103 AD2d 900; *see,* Domestic Relations Law § 170 [1]). Mere incompatibility is not enough *(Hessen v Hessen,* 33 NY2d 406, 410; *Kennedy v Kennedy,* 91 AD2d 1200).

Defendant, who was in his late 60s, alleged that plaintiff, who was 50 years of age, exhibited a cold and unsympathetic demeanor toward him, failed to engage in specific acts of intimacy, particularly kissing on the mouth and holding hands, failed to communicate with defendant and belittled him sexually. Doubtless, these things make cohabitation unpleasant; they do not, however, rise to the level of misconduct necessary to support a finding of cruel and inhuman treatment *(see, Breckinridge v Breckinridge, supra,* at 901; *see also, Del Gatto v Del Gatto,* 142 AD2d 545).

We are unpersuaded that the antenuptial agreement should be canceled, annulled or rescinded, as defendant urges, because plaintiff did not carry out her marriage vows. In perti-

nent part, the agreement provides that "[i]f at any time [plaintiff] shall fail to fulfill her marriage vows or obligations, then [defendant] shall not be bound by the terms of this agreement". Reference is not made in the agreement to any particular document or set of promises, but only to the undefined and undeclared "vows" of a marriage which had not yet been celebrated. There is no universal set of vows to which all marrying couples subscribe, however, and the form and content of marriage ceremonies is, to say the least, diverse. Moreover, there is no evidence that the parties, who were of different faiths, had a "meeting of the minds" with regard to this provision at the time they entered into the antenuptial contract. At best, this clause represents nothing more than an unenforceable "agreement to agree".

Beyond that, even if the clause was enforceable on its face, Supreme Court was correct in its conclusion that plaintiff's actions were justified. To the extent that the actual vows recited by these parties are sufficiently specific to be interpreted as concrete promises,* there is no evidence that plaintiff breached them in any way other than by seeking a divorce, which defendant suggests could be interpreted as a violation of the requirement that she remain his wife for "as long as [they] both shall live". By pressing plaintiff to sign a separation agreement defendant effectively forced plaintiff into a catch-22 situation: if she signed the agreement, she would thereby cease to be defendant's "loving wife" as long as they both lived, and if she refused to sign it, she could be accused of failing to "respect" his wishes. In either event she would have broken her vows. Having provoked plaintiff to do so, defendant may not now rely on her failure to perform those vows as a defense.

We have considered defendant's other arguments and find them to be without substance.

Levine, Crew III, Mahoney and Harvey, JJ., concur. Ordered that the judgment is affirmed, with costs.

---

* The "vows", as testified to by defendant, consisted of two promises. Plaintiff promised first to "be [defendant's] loving and faithful wife in plenty and in want, in joy and in sorrow, in sickness and in health, as long as we both shall live", and second, to "love, honor and respect him in all duty and service in all state and tenderness, to live with him, cherish him, and respect him according to the ordinance of God and the holy bonds of marriage".