L.J. v Jing Zhang (2024 NY Slip Op 50177(U))

[*1]

L.J. v Jing Zhang

2024 NY Slip Op 50177(U)

Decided on February 23, 2024

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 23, 2024
Supreme Court, Kings County

L.J., mother and natural guardian of J.J., an infant under the age 
 of fourteen years and L.J., individually, Plaintiffs,

against
Jing Zhang, Defendant.

Index No. 528420/2021

Lipsig, Shapey, Manus & Moverman, P.C., New York City (Michael A. Marando of counsel), for Plaintiffs.
Cheven, Keely & Hatzis, New York City (Eugene Neporanny of counsel), for Defendant.

Aaron D. Maslow, J.

The following numbered papers were read on this motion:
Submitted by Plaintiffs
NYSCEF Doc No. 16: Notice of Motion & Proposed Order
NYSCEF Doc No. 17: Statement of Material Facts
NYSCEF Doc No. 18: Exhibit A — Police Report
NYSCEF Doc No. 19: Exhibit B — Summons & Complaint
NYSCEF Doc No. 20: Exhibit C — Answer
NYSCEF Doc No. 21: Exhibit F — Bill of Particulars
NYSCEF Doc No. 22: Exhibit E — Affidavit of L.J. ["Mother's Aff"]
NYSCEF Doc No. 23: Exhibit F — Affidavit of Z.C. ["Father's Aff"]
NYSCEF Doc No. 24: Affirmation of Service
NYSCEF Doc No. 25: Affirmation of James D. Neville, Esq. in Support ["Neville Affn in Support"]
Submitted by Defendant
NYSCEF Doc No. 26: Affirmation of David Brown, Esq. in Opposition ["Brown Affn in Opp"]
NYSCEF Doc No. 27: Statement of Material Facts
NYSCEF Doc No. 28: Exhibit A — Affidavit of Jing Zhang ["Zhang Aff"]
Submitted by Plaintiffs
NYSCEF Doc No. 29: Reply Affirmation of James D. Neville, Esq. in Support ["Neville Reply Affn in Support"]
Filed by Court
NYSCEF Doc No. 30: Transcript of Proceedings
 I. Holding Hands
Does the failure to hold hands have legal consequences?[FN1]
With no specific directly-on-point appellate authority within the negligence realm, this Court determines the issues presented in this motor vehicle accident case.[FN2]

II. Questions Presented
Three issues arise in this action commenced by Plaintiffs against Defendant driver for injuries sustained by infant Plaintiff due to Defendant's alleged negligence per se in striking the child. First, is a defendant negligent as a matter of law where he struck an infant — whom he concededly did not see — crossing together with his parents in a crosswalk with the right of way? Second, may alleged contributory negligence on the part of the parents — not having held the infant's hand or otherwise restrained him, as argued herein by the defendant — be asserted as a counterclaim or an affirmative defense for contribution and/or indemnification as a matter of law? Third, may alleged contributory negligence on the part of an infant plaintiff — not grasping a parent's hand, as argued herein by the defendant — be asserted by the defendant as a counterclaim or an affirmative defense for contribution and/or indemnification as a matter of [*2]law?
The last two questions present legal issues of first impression with respect to the degree of physical contact necessary to be maintained between parents and a young child, such as by holding hands or otherwise restraining him, when crossing the street, so as to avoid either the parents or the child being contributorily negligent if the child is struck by a motorist.

 III. Background
On October 18, 2021, Defendant Jing Zhang ("Defendant") struck infant child J.J. ("J.J." or "Plaintiff J.J.") while making a left turn from northbound 7th Avenue onto westbound 55th Street (see generally NYSCEF Doc No. 19, Complaint). At the time, J.J and his father, Z.C. ("Father"), followed L.J., the mother ("Mother" or "Plaintiff Mother"), as they crossed 55th Street in a southbound direction within the crosswalk and in accordance with the WALK traffic signal (see NYSCEF Doc No. 22, Mother's Aff, ¶¶ 3, 5; NYSCEF Doc No. 23, Father's Aff ¶¶ 3, 5; NYSCEF Doc No. 28, Zhang Aff ¶¶ 1-2). Defendant failed to see J.J. before making the turn and struck the infant, causing him to fall (see NYSCEF Doc No. 22, Mother's Aff, ¶¶ 7, 12; NYSCEF Doc No. 23, Father's Aff ¶¶ 7, 9; NYSCEF Doc No. 28, Zhang Aff ¶ 2). J.J., who was four years old at the time, less than a month away from his fifth birthday (see NYSCEF Doc No. 18, Police Report at 1), allegedly sustained severe and permanent injuries including fractures to the bilateral acute superior and inferior pubic rami (see NYSCEF Doc No. 22, Mother's Aff, ¶ 3; NYSCEF Doc No. 23, Father's Aff ¶ 3).
Plaintiffs alleged that J.J.'s injuries were caused by the sole negligence of Defendant (see NYSCEF Doc No. 19, Complaint ¶¶ 12-14). Defendant asserted a counterclaim against Plaintiff Mother:
That if the plaintiff(s) was caused to sustain damages at the time and place set forth in the plaintiff(s) Complaint through any carelessness, recklessness, and negligence other than the aforementioned plaintiff(s) own, said damages arose in whole or in part from the negligence of the plaintiff(s), and if any judgment is recovered herein by the plaintiff(s) against the answering defendant(s), the answering defendant(s) will be entitled to indemnification and/or contribution in whole or in part, by the above-named plaintiff(s).
(NYSCEF Doc No. 20, Answer at 4.) Defendant also interposed affirmative defenses alleging culpable conduct on the part of Plaintiffs:
[First Affirmative Defense] Upon information and belief, the injuries and/or damages, if any; alleged to have been sustained by the Plaintiff(s) were caused in whole or in part by the culpable conduct of the Plaintiff(s).
. . .
[Fifth Affirmative Defense] Any recovery or verdict against the answering Defendant(s) must be reduced by virtue of the failure of the Plaintiff(s) to have exercised due care to avoid, eliminate and/or mitigate the injury and/or damages allegedly sustained.
. . .
[Seventh Affirmative Defense] All risks and/or danger of loss or damage connected with the situation alleged in the Plaintiff's Complaint were at the time and place mentioned in [*3]the Complaint obvious and apparent and were known by the plaintiff(s) and voluntarily assumed by the plaintiff(s).
. . .
[Eighth Affirmative Defense] The liability of the answering Defendant(s) is limited by the provisions of Article 16 of the New York Civil Practice Law and Rules (CPLR).
(Id. at 4-5.)
Plaintiffs now move for summary judgment on liability, claiming that there are no issues of fact as Defendant's negligence is the "sole proximate cause" of the collision and resulting serious injury. Plaintiffs also request that Defendant's affirmative defenses sounding in comparative negligence [FN3]
be stricken. Plaintiffs maintain freedom from comparative fault and, even if that is not the case, claim that a finding of such freedom would be unnecessary to rule in Plaintiffs' favor. (See generally NYSCEF Doc No. 16, Notice of Motion; NYSCEF Doc No. 17, Statement of Material Facts; NYSCEF Doc No. 25, Neville Affn in Support; NYSCEF Doc No. 29, Neville Reply Affn in Support.)
Defendant opposes this motion, arguing that summary judgment is not appropriate when several factual accounts are in conflict — in particular, whether Father and J.J. were holding hands at the time of the accident. Defendant further argues that Defendant was not the "sole proximate cause" because Plaintiff Mother, Father, and Plaintiff J.J. were all contributorily negligent: Plaintiff Mother and Father in not holding J.J.'s hand and failing to offer reasonable supervision, and J.J in failing on his own volition to grasp a parent's hand. (See generally NYSCEF Doc No. 26, Brown Affn in Opp.)
Plaintiffs claim that "J.J. was holding his father's hand and was walking slightly behind him" (NYSCEF Doc No. 22, Mother's Aff ¶ 5), while Defendant maintains, "The child was at least a meter behind the adults and was not being supervised or holding anyone's hand" (NYSCEF Doc No. 28, Zhang Aff ¶ 2).
In any event, that Defendant struck J.J. within the crosswalk is not in dispute. Defendant himself swore as follows:
I was proceeding on 7th Avenue prior to the incident. As I approached the intersection with 55th Street I began to slow my vehicle down. It was my intention to make a left turn onto 55th Street. I slowed my vehicle down to almost a stop to let two people cross in front of me. I then began to make my left turn at a slow rate of speed. Unfortunately, I had a contact with a child who appeared to be three to four years of age. The child was at least a meter behind the adults and was not being supervised or holding anyone's hand. The child was also short and difficult to see.
(NYSCEF Doc No. 28, Zhang Aff ¶ 2.)
Defendant's position can be summed up in paragraph 23 of his counsel's affirmation:
Moreover, the plaintiff pedestrians in this matter left the curb which was a place of safety and went into the path of the driver when it was not safe to do so. Further, the parents in this matter were clearly negligent for allowing a three or four year old child to cross the street alone. The child was at least a meter behind them and was unsupervised. Additionally, the child was not holding anyone's hand. The parents here clearly were negligent and breached their duty to supervise their child resulting in the incident transpiring. Any reasonable person would have held the child's hand and watched for vehicles as they crossed the street with their toddler. It was foreseeable that an incident could transpire if a toddler is allowed to cross a busy intersection unsupervised. As a result of the aforementioned summary judgment should at least be denied until defendant has had an opportunity to depose the plaintiffs.
(NYSCEF Doc No. 26, Brown Affn in Opp ¶ 23.)
Summary judgment is a drastic remedy that should be granted only if no triable issues of fact exist and the movant is entitled to judgment as a matter of law (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]; Andre v Pomeroy, 35 NY2d 361, 364 [1974]). The party moving for summary judgment must present a prima facie case of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form demonstrating the absence of material issues of fact, and the failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see CPLR 3212 [b]; Smalls v AJI Industries, Inc., 10 NY3d 733 [2008]; Alvarez, 68 NY2d at 324).
Once a prima facie showing has been made, however, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution or tender an acceptable excuse for the failure to do so; mere expressions of hope are insufficient to raise a genuine issue of fact (see Zuckerman v City of New York, 49 NY2d 557 [1980]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (see Rotuba Extruders, Inc. v Ceppos, 46 NY2d 223, 231 [1978]).
If there are no disputed materials issues of fact, and all that remain are issues of law, summary judgment is suitable for determining them. "Only when sole questions of law exist in an action may the court decide the case upon the parties' submissions without a trial" (Credit Acceptance Corp. v Pinkney, 80 Misc 3d 1093 [City Ct, Buffalo 2023]). An issue of law does not prevent the granting of summary judgment when the law is on the side of one of the parties (see Town of Greenburgh v Country Ridge Assoc., 32 Misc 2d 475, 477 [Sup Ct, Westchester County 1961]). In the instant action, with respect to liability, "[a]ll that remains to be determined herein are questions of law and it has been held that an issue of law, no matter how serious or difficult, does not prevent the granting of summary judgment where no material issue of fact is presented (Coutts v. Kraft & Bros. Co., 119 Misc. 260, affd. 206 App. Div. 625)" (Balducci v Merchants Natl. Bank & Tr. Co. of Syracuse, 74 Misc 2d 406, 409 [Sup Ct, Onondaga County 1972], affd 41 AD2d 1030 [4th Dept 1973]).
Assuming that Defendant was accurate in swearing that J.J. was not holding anyone's [*4]hand, this case presents the legal issue of whether Defendant was negligent as a matter of law in striking J.J. and whether there is any potential culpable conduct rising to contributory negligence resulting from J.J. not grasping a parent's hand or a parent not having held J.J.'s hand.

 IV. Contentions
A. Plaintiffs
Plaintiffs' motion for summary judgment is based on the theory that the collision was caused wholly and solely by reason of Defendant's negligence. Plaintiffs specifically state that, although walking slightly behind Father, Plaintiff J.J. was holding Father's left hand as they crossed the intersection in compliance with the steady WALK signal controlling a designated crosswalk (see NYSCEF Doc No. 23, Father's Aff ¶ 5; NYSCEF Doc No. 22, Mother's Aff ¶ 5; NYSCEF Doc No. 25, Neville Affn in Support ¶¶ 8, 16, citing VTL §1112). Upon seeing Defendant's vehicle, Father contends that he tried but was unable to pull J.J. out of the way due to the oncoming vehicle's speed (see NYSCEF Doc No. 23, Father's Aff ¶ 7). Plaintiffs claim that infant J.J. was struck because Defendant failed to exercise due care in avoiding the collision and that the turn was made without reasonably affording safety to the pedestrians present (see NYSCEF Doc No. 25, Neville Affn in Support ¶ 19, 20, 23, citing VTL §§ 1146, 1163 [a]). Defendant having failed to abide by Vehicle and Traffic Law provisions, Plaintiffs conclude that Defendant is negligent per se and his defense of comparative negligence should be stricken; Plaintiffs deny any fault in the occurrence of the accident (see NYSCEF Doc No. 25, Neville Affn in Support ¶ 22, citing Wray v Galella, 172 AD3d 1446 [2d Dept 2019] [Plaintiff established prima facie entitlement to judgment by submitting affidavit demonstrating that defendant failed to exercise due care in yielding right of way to pedestrian in crosswalk; defendant failed to raise triable issue of fact as to whether plaintiff was comparatively at fault]).

B. Defendant
Defendant opposes this motion, arguing that summary judgment is inappropriate in several respects. First, Defendant contends that granting summary judgment pre-discovery means potential valuable information would remain in the sole possession of Plaintiffs. Therefore, Defendant requests a reasonable opportunity to obtain discovery before the determination of summary judgment (see NYSCEF Doc No. 26, Brown Affn in Opp ¶¶ 8-9, citing Urcan v Cocarelli, 234 AD2d 537, 538 [2d Dept 1996] [defendant summary judgment motion denied to enable depositions in action where defendant allegedly negligent in supervision of his son]). Second, Defendant stresses the existence of several triable issues of fact. While Plaintiffs state that Father was holding infant J.J.'s hand, Defendant counters that the child was at least a meter behind the adults and not holding anyone's hand as evidenced by Father not being struck by Defendant's vehicle (see NYSCEF Doc No. 26, Brown Affn in Opp ¶ 22). Plaintiffs further attest to Defendant's vehicle driving speedily (see NYSCEF Doc No. 22, Mother's Aff ¶ 12), but Defendant maintains that he was driving slowly (see NYSCEF Doc No. 28, Zhang Aff ¶ 2). Defendant contends that the existence of these and other factual discrepancies foreclose the suitability of summary judgment at this time.
Defendant asserts that he bears no responsibility in this accident as Plaintiff J.J.'s parents were negligent in allowing J.J., an infant close to five years of age to cross the street without holding anyone's hand. "What makes this different is that it is an infant. The duty is on the parent or guardian to make sure that kid is not walking behind them walking down the street." (NYSCEF Doc No. 30, tr at 7, lines 2-5.) Defendant also ascribes some fault to J.J.:
The Court: Would you argue or don't you think there is something to argue that someone four, five, they have already achieved the intellectual maturity at that point where they know they have to hold [their] parent's hands when they are out in the street?
MR. MARANO: Judge, if I can respond.
The Court: I am asking defense counsel.
MR. NEPORANNY: We don't know the child's capacity. We don't know the situation, what his mental capacity was. If he is  a kid that age should know to hold his mom's hand or the parents should say, take my hand. In this situation we don't know. It is speculation. Maybe the kid was unable to realize that, hey, my mom is ahead of me. Maybe I should hold her hand.
(Id. at 7, line 22, through 8, line 11.)
Defendant avers that the parents thereby breached their duty to supervise their child, which led to J.J.'s injuries. Among the cases cited by Defendants was Barr v County of Albany (69 AD2d 914 [3d Dept 1979], affd as mod 50 NY2d 247 [1980] [elements of negligence include duty that must be breached, proximately resulting in plaintiff's injury]). Moreover, Defendant claims, any reasonable person would have held the child's hand and watched for vehicles as they crossed the street with an infant (see NYSCEF Doc No. 26, Brown Affn in Opp ¶ 23). Defendant relies on, among other cases, Beninati v City of Troy (163 AD3d 1241 [3d Dept 2018]), for the proposition that a plaintiff claiming negligent supervision must demonstrate both that the defendant breached his or her duty to provide adequate supervision and that this breach was the proximate cause of the injuries sustained. Thus, it was foreseeable that an accident would occur if an infant were allowed to cross a busy intersection unsupervised.

V. Discussion
A. Defendant's Alleged Negligence
Under common law negligence, there must be a duty owed that is breached, caused by the defendant's actions leading to the plaintiff's harm. Negligence per se, however, establishes the elements of duty and breach through the unexcused violation of a statute.
"[W]hen a defendant violates a statute that defines the degree of care to be used under certain circumstances, the violation constitutes negligence per se if (1) it causes the injury, (2) the plaintiff is a member of the class intended to be benefited by the statute, and (3) the statute is intended to protect against the very hazard that caused the plaintiff's injury" (Guerrero v [*5]Loiacono, — F Supp 3d — [ED NY 2023]).[FN4]

"Obviously, not every statute which commands or prohibits particular conduct is within this principle. Only when the statute is designed to protect a definite class from a hazard of definable orbit, which they themselves are incapable of avoiding, is it deemed to create a statutory cause of action and to impose a liability unrelated to questions of negligence. This rule is based upon the view that, not being dependent upon proof of specific acts of negligence on defendant's part, the cause of action may not be defeated by proof of plaintiff's want of care. Thus, it has been said, 'If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery for bodily harm caused by the violation of such statute' (Restatement, Torts, § 483)." (Koenig v Patrick Constr. Corp., 298 NY 313, 317 [1948], quoted in Van Gaasbeck v Webatuck Cent. School Dist. No. 1, 21 NY2d [*6]239, 244 [1967].)
"A violation of the Vehicle and Traffic Law constitutes negligence as a matter of law" (Simon v Rent-A-Center East, Inc., 180 AD3d 1100, 1101 [2d Dept 2020]). "By the very terms of the hypothesis, to omit, willfully or heedlessly, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform" (Martin v Herzog, 228 NY 164, 168 [1920, Cardozo, J.]).
Vehicle and Traffic Law § 1112 [a] provides:
Whenever pedestrians are controlled by pedestrian-control signals exhibiting the words "WALK" or "DON'T WALK", or exhibiting symbols of a walking person or upraised hand, such signals shall indicate and apply to pedestrians as follows:
(a) Steady WALK or walking person. Pedestrians facing such signal may proceed across the roadway in the direction of the signal and shall be given the right of way by other traffic.
Vehicle and Traffic Law § 1146 (a) provides: "Notwithstanding the provisions of any other law to the contrary, every driver of a vehicle shall exercise due care to avoid colliding with any bicyclist, pedestrian, or domestic animal upon any roadway and shall give warning by sounding the horn when necessary."
Vehicle and Traffic Law § 1111 (a) (1) (emphasis added) provides:
Whenever traffic is controlled by traffic-control signals, other than lane direction control signal indications provided in section eleven hundred sixteen, exhibiting different colored lights, or colored lighted arrows, successively, one at a time or in combination, only the colors green, yellow and red shall be used, and said light shall indicate and apply to drivers of vehicles and to pedestrians as follows:
(a) Green indications:
1. Traffic, except pedestrians, facing a steady circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. Such traffic, including when turning right or left, shall yield the right of way to other traffic lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.
Although a driver facing a steady green light is entitled to proceed, he or she has a duty to yield the right-of-way to pedestrians lawfully crossing within a crosswalk with a WALK sign in their favor and to see what there is to be seen through the proper use of one's senses, and the failure to do so constitutes negligence per se (see Crist v Rosenberger, 219 AD3d 569 [2d Dept 2023] [driver's claim that pedestrian stepped into side of vehicle at last moment not credible as matter of law]; E.B. v Gonzalez, 208 AD3d 618 [2d Dept 2022] [driver blinded by sun glare struck infant in marked crosswalk]; Cui v Hussain, 207 AD3d 788 [2d Dept 2022] [driver who did not see pedestrian before striking her still liable]; Lieb v Jacobson, 202 AD3d 1072 [2d Dept 2022] [left-turning driver struck pedestrian, claiming not to have seen her]; DiDonna v Houck, 111 AD3d 662 [2d Dept 2013] [pedestrian who began crossing with steady WALK signal must be afforded right of way although signal changed]; Barbieri v Vokoun, 72 AD3d 853 [2d Dept 2010] [left-turning driver struck pedestrian with green light whom he thought would stay in [*7]place]; Thorsen v Sunbelt Rentals, Inc., 79 Misc 3d 1218[A], 2023 NY Slip Op 50659[U] [Sup Ct, Kings County 2023] [sun glare no excuse for striking pedestrian in crosswalk]).[FN5]

Moreover, such pedestrians are "entitled to anticipate that motorists will obey the traffic laws that require them to yield" (Huang v Franco, 149 AD3d 703 [2d Dept 2017]; see Ahmed v Garzon, 210 AD3d 832 [2d Dept 2022]); Wray, 172 AD3d 1446).
Here, Defendant is negligent as a matter of law for injuries sustained by infant Plaintiff J.J. Defendant Zhang asserts that Plaintiffs are subject to traffic regulations pursuant to VTL §1150 yet does not contest that Plaintiffs had the WALK signal allowing them to proceed across the roadway (see VTL §1112 [a]). Defendant further suggests that Plaintiff J.J. suddenly entered the path of his vehicle at a time when he was unable to yield, citing to VTL § 1151 [b]. However, this contention appears to be inconsistent with Plaintiff J.J. having the WALK signal. Defendant driver should have known or should have reasonably known that the pedestrian WALK signal indicates the possibility of pedestrians stepping into the crosswalk. Defendant was therefore required to exercise due care and turn only upon a determination that such could be accomplished with reasonable safety (see VTL §§ 1146, 1163 [a]). It is not an excuse that he failed to see Plaintiff J.J., because the latter was there to be seen by someone through the proper use of one's eyesight. Therefore, Defendant's striking J.J. is in clear violation of the Vehicle and Traffic Law, which created a standard of conduct applying to situations in which drivers should yield to protect pedestrians from potential harm.
The conflict concerning the speed of Defendant's vehicle which Defendant raised in his opposition papers (see supra at 6) is irrelevant as a matter of law (see Batts v Page, 51 AD3d 833 [2d Dept 2008] [assertion regarding speed irrelevant when party drove into intersection controlled by stop sign and failed to yield right of way in violation of VTL provision]; accord Yelder v Walters, 64 AD3d 762 [2009]).
As such, in the absence of any material issues of fact and there being only an issue of law, Plaintiffs are entitled to summary judgment on the issue of liability.

B. Plaintiffs' Alleged Comparative Negligence
"With the advent of the comparative negligence system in 1975, plaintiff's contributory fault is no longer an absolute bar to recovery. Under the standard of comparative negligence, plaintiff's fault may proportionally diminish the recovery but will not preclude recovery unless plaintiff was solely at fault, CPLR 1411" (1A NY PJI3d 2:36 at 366 [2024]). "Although a plaintiff is not required to establish his or her freedom from comparative negligence, the issue of a plaintiff's comparative negligence may be decided in the context of a summary judgment motion where, as here, the plaintiff seeks summary judgment dismissing an affirmative defense [*8]alleging comparative negligence (Higashi v M&R Scarsdale Rest., LLC, 176 AD3d 788 [2d Dept 2019]; see Poon v Nisanov, 162 AD3d 804 [2d Dept 2018]).
The burden of proof on the issue of comparative negligence is upon the defendant (see Rodriguez v City of New York, 31 NY3d 312 [2018]). However, a plaintiff seeking to dismiss a defendant's affirmative defenses alleging plaintiff's culpable conduct must establish his freedom of comparative negligence as a matter of law, i.e., that there are no material issues of fact concerning any negligence on his part (see Jones v Zuo, 220 AD3d 933 [2d Dept 2023]).
"Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances." (PJI 2:10; see Gray v Gouz, Inc., 204 AD2d 390, 390 [2d Dept 1994]). This standard applies to the general populace including intoxicated persons and those with mental disabilities whereas a separate standard exists for peoples with physical disabilities (see PJI 2:20, 2:21, 2:22, 2:45, 2:46, 2:47).
For children, however, there exists a modified standard in which minors are to be held to the standard of a reasonably prudent child of similar age, experience, intelligence, and degree of development (see PJI 2:23, 2:48; Sorto v Flores, 241 AD2d 446, 447 [2d Dept 1997] [no viable negligent supervision claims against mother and grandfather of five and one-half-year-old boy whose bicycle collided with plaintiff three-year-old]), unless such child engages in an inherently dangerous activity which would result in their being held to the general reasonably prudent person standard (see PJI Costa v Hicks, 98 AD2d 137 [2d Dept 1983]; Reiszel v Fontana, 35 AD2d 74 [2d Dept 1970]).[FN6]

Defendant argues that Plaintiff Mother should be vicariously liable for Plaintiff J.J.'s alleged violation of VTL §1151 [b][FN7]
for suddenly stepping in front of his vehicle at a time when he could not reasonably yield. This argument, however, raises three queries, if indeed J.J. engaged in such dangerous movement: first, whether J.J. can be considered a reasonably prudent person who could foresee injury as a result of his conduct; second, whether J.J.'s alleged actions can be considered reasonably foreseeable; and, third, whether Plaintiff Mother is liable for Plaintiff J.J.'s actions.
Both Defendant and Plaintiffs fail to sufficiently articulate in their papers which standard [*9]of care should be used in this case. Having referenced PJI 2:12 [FN8]
(see NYSCEF Doc No. 26, Brown Affn in Opp ¶ 16), it is assumed that Defendant believes this Court should hold J.J. to the reasonably prudent person standard applied to adults generally. After all, in oral argument, Defendant maintained, "[A] kid that age should know to hold his mom's hand or the parents should say, take my hand" (NYSCEF Doc No. 30, tr at 9, lines 6-8). This Court disagrees and believes that infant Plaintiff J.J. should be held to the standard of a reasonably prudent child of five years of age, as crossing the street with a WALK signal is not considered an inherently dangerous activity.
This Court does not address the issue of what Plaintiff Mother or Father should have done as reasonably prudent persons when crossing the street with an infant, as General Obligations Law § 3-11 provides: "In an action brought by an infant to recover damages for personal injury the contributory negligence of the infant's parent or other custodian shall not be imputed to the infant." Furthermore, in terms of a counterclaim seeking indemnification or an affirmative defense seeking contribution to an alleged tortfeasor of an infant child from a parent accused of negligent supervision of everyday activities (like crossing the street), this Court notes:
Moreover, the allowance of a counterclaim or third-party complaint against a parent for negligent supervision of his child would, we believe, be contrary to the legislative policy expressed in section 3-111 of the General Obligations Law because, in effect, it would result in imputation of the parent's negligence to the child. That enactment, formerly part of the Domestic Relations Law, was a legislative nullification of early decisions which allowed a jury to consider a defense in bar of contributory negligence on the part of a plaintiff child by imputing to the child the negligence of the parent in failing to provide reasonable supervision (e.g., Weil v. Dry Dock, East Broadway & Battery R. R. Co., 119 NY 147; Mangam v. Brooklyn R. R. Co., 38 NY 455; Hartfield v. Roper, 21 Wend. 615). Section 3-111 provides that "the contributory negligence of the infant's parent *** shall not be imputed to the infant." We recognize, of course, that with the advent of Dole contribution not all of the concerns embodied in section 3-111 are apposite, since [*10]the allowance of contribution among joint tort-feasors is not the same thing as a total bar to recovery because of contributory negligence. Thus, section 3-111 would not prohibit a Dole contribution where the parent's conduct toward his child would be a tort "if done by one ordinary person to another". (McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030.) In our cases, however, the issue is whether the parent's conduct in failing to provide proper supervision is actionable. Until the Legislature speaks more clearly to this point, we would read its enactment of the predecessor of section 3-111 as evincing a legislative concern that the parent's failure to provide adequate supervision not be permitted to diminish or bar a child's recovery against a third party. (Holodook v Spencer, 36 NY2d 35, 48-49 [1974].)
This Court likewise acknowledges further case law in favor of J.J.'s parents, Plaintiff Mother and Father (e.g. Martinez v Kaz USA, Inc., 183 AD3d 720 [2d Dept 2020] [third-party action by humidifier manufacturer seeking contribution from allegedly negligent supervisory parents whose ten-month-old daughter was scalded not legally cognizable]; Wheeler v Sears Roebuck & Co., 37 AD3d 710 [2d Dept 2007] [father cannot be negligent in supervising two-year-old child injured by defective treadmill]; Boyd v Trent, 297 AD2d 301, 302 [2d Dept 2002] [motion to strike defense of contributory negligence granted because mother-plaintiff's failure to ensure infant children remained restrained in safety belts cannot be imputed to two- and four-year-olds, who are incapable of being liable for negligence]; Thurel v Varghese, 207 AD2d 220, 224 [2d Dept 1995] [appellant's counterclaim based solely upon mother's negligent supervision of her two-month-old son in holding him and not placing him in child restraint does not state cognizable cause of action in this State]).
Despite Defendant's belief that a child of J.J.'s age "should know to hold his mom's hand or [the] parents should say, take my hand" (NYSCEF Doc No. 30, tr at 8, lines 6-8), this Court believes this issue implicates the parents' decision of how to rear their child and has no bearing on what an average five-year-old would inherently understand of the world around them (see Ferrer v Harris, 55 NY2d 285 [1982], quoting Wooster v Broadway & S.A.R. Co., 72 Hun 197, 198 [Gen Term 1st Dept 1893] [as pertaining to the safety practices the mother instructed children to follow when crossing a street, court stated that it is "not competent for a plaintiff to give evidence that the person by whom the alleged negligent act was committed had previously committed [others]"]). It is well understood that the government intrudes minimally upon general family relations, i.e. the parent-child relationship and the parents' choice of how to rear their child, rendering the law's "external coercive incentives" inappropriate in the face of family obligations (Holodook, 36 NY2d at 50). Therefore, it would be inappropriate for this Court to deeply delve into the appropriateness of how Plaintiff Mother and Father chose to cross the street with their child.
Clearly, there is simply no basis in law for Defendant's claim that he is entitled to an affirmative defense (or counterclaim) sounding in negligent parental supervision — that Plaintiff J.J.'s parents should have held his hand while traversing an intersection crosswalk facing a WALK signal. How a four-year-old child going on five's parents supervise him — whether to hold hands or otherwise maintain physical contact — in routinely crossing the street after them with a WALK signal in their favor is totally within their discretion, and a third-party tortfeasor in [*11]New York is prohibited as a matter of law from questioning their judgment and seeking contribution and indemnification from them after he injures their child.
We will next address infant Plaintiff J.J.'s conduct leading up to the accident. We assume for these purposes that Defendant is correct that J.J. did not hold anyone's hand while crossing the intersection within the crosswalk (albeit acknowledge that Plaintiffs maintain that he did).
While not an expert on childhood psychology, this Court maintains that an average child of J.J.'s age, intelligence, and experience would generally have a basic understanding of, at the very least, knowing to follow his parents or guardians when crossing a street rather than specific knowledge regarding the "cross-walk rule" (see Avram v Haddad, 8 AD2d 942, 942 [2d Dept 1982]). "[T]he court's supplemental charge which held the infant plaintiff accountable for understanding the provisions of the 'cross-walk rule' was improper. A five-year-old child may not be charged with understanding of such a rule." (Id.). "This court has stated, on more than one occasion, that a child of tender years is not to be charged with a knowledge and understanding of traffic regulations (see Schaffner v Rockmacher, 38 AD2d 835; Rubin v O'Donnell, 37 AD2d 858; Dugan v Dieber, 32 AD2d 815)" (Branch v Stehr, 93 AD2d 849, 850 [1983] [setting aside jury verdict apportioning 90% fault to infant plaintiff who was few days away from sixth birthday]).
The defendant is the proximate cause of the plaintiff's harm if the type or kind of harm that results is reasonably foreseeable based on the defendant's conduct. The defendant is the sole proximate cause of a plaintiff's injuries where there is an intervening act or cause that is reasonably foreseeable at the time of the defendant's breaching conduct. If the intervening act would have been unforeseeable to a reasonably prudent person in the defendant's position, then the act is considered a superseding cause, and defendant's breach is not deemed the sole proximate cause of plaintiff's injury. (See Hain v Jamison, 28 NY3d 524, 528-529 [2016].)
Plaintiffs maintain that Defendant was the sole proximate cause of J.J.'s injuries because pedestrians in crossing in a crosswalk with a WALK signal are reasonably foreseeable to a reasonably prudent person. Defendant, however, urges the Court to view J.J. crossing the street unsupervised and not holding anyone's hand as an intervening act that could not have been foreseen by a reasonably prudent person. While this Court acknowledges the potential for an unsupervised four-year-old, almost five, to act unpredictably, J.J.'s allegedly being too short to easily be seen and walking about a meter behind his parents fail to suggest that the infant acted in a way inconsistent for children of his age, experience, intelligence, and degree of development (see Sorto, 241 AD2d at 447). Compare the instant situation of four-year-old, nearly five, J.J. with that in Shui-Kwan Lui v Serrone, 103 AD3d 620 [2d Dept 2013], revg 2011 WL 12839771 [Sup Ct, Queens County 2011], where a 12-year-old bicyclist's concession that he did not attempt to move out of the way of an approaching truck created an issue of fact as to comparative negligence.
Notably, there is no evidence of J.J failing to follow his parents across the crosswalk let alone that the child strayed from the crosswalk and either abruptly stepped in front of Defendant's vehicle or allowed himself to be struck (see id.; Ehrlich v Mara, 32 AD2d 638 [2d Dept 1969] [plaintiff of four years and ten months struck by car while crossing street under mother's direction and supervision held not contributorily negligent]).
Accordingly, this Court holds that the law in New York does not place the onus on a child nearly five years old to grasp a parent's hand while crossing the street within a crosswalk behind the parents and with a WALK sign in their favor, such that the failure to do so constitutes [*12]contributory negligence on the part of the child when struck by a motorist who failed to see the child.

 C. Discovery
Defendant's request for a reasonable opportunity to obtain discovery before the determination of summary judgment on liability (see NYSCEF Doc No. 26, Brown Affn in Opp ¶¶ 8-9) is denied. Defendant's application is based on the notion that Plaintiff Mother may still have valuable information that has not yet been turned over and will remain solely in her possession if time for discovery is not extended (see id. ¶ 9). However, Defendant fails to offer personal knowledge suggesting the existence of relevant facts at Plaintiffs' disposal (see Abramov v Miral Corp., 24 AD3d 397, 398 [2d Dept 2005]). Defendant has submitted an affidavit as to his version of what transpired when he struck Plaintiff J.J. Nothing further would be gleaned in terms of the issue of liability by deposing Plaintiff Mother, Father, and Plaintiff J.J.[FN9]
There is sufficient evidence in the record on summary judgment to conclude that there are no triable issues of fact regarding liability.
Furthermore, it is understood that "the mere hope or speculation that evidence sufficient to defeat a motion for summary judgment may be uncovered by further discovery is an insufficient basis for denying the motion" (see Buchinger v Jazz Leasing Corp., 95 AD3d 1053, 1054 [2d Dept 2012] [citations and internal quotation marks omitted). "[A]part from sheer speculation, [Defendant] has offered no reason to believe that further discovery would be fruitful on this issue" (Fried v Seippel, 80 NY2d 32, 41 n 5 [1992]).

 VI. Conclusion
Whether infant Plaintiff J.J. was or was not holding hands with his father is not a material issue of fact in dispute inasmuch as it holds no bearing on the issue of comparative negligence. There are no issues of fact preventing this Court from adjudicating the issues posed as a matter of law.
In terms of those issues of law, this Court reiterates its conclusions:
First, Defendant driver is negligent as a matter of law where he struck an infant, whom he concededly did not see, crossing together with his parents in a crosswalk while facing a WALK signal. Various Vehicle and Traffic Law provisions established the duty of care for Defendant, which he breached upon striking Plaintiff J.J. after failing to ensure no person was in the crosswalk when he turned left.
Second, alleged contributory negligence on the part of the parents for not holding infant Plaintiff J.J.'s hand may not be asserted by Defendant as an affirmative defense or counterclaim seeking contribution and/or indemnification. One cannot impute to infant children any negligence in their supervision by parents. Damages payable by defendant drivers for injuries caused to infant children crossing the street cannot be reduced through contribution or satisfied through indemnification from the parents. There is no such cognizable cause of action against the parents.
Third, the alleged contributory negligence on the part of the infant Plaintiff J.J. for not [*13]holding the hand of a parent may not be asserted by Defendant driver as an affirmative defense or counterclaim. Infant children almost five years of age are incapable of being liable for comparative negligence while crossing the street with a WALK sign. However, if, arguendo, the infant child may be deemed old enough to be liable for negligence then the reasonably prudent child standard should be utilized such as here where it was determined that a reasonably prudent four-year-old nearly five, like J.J., cannot grasp the details of traffic laws. Yet, as no evidence was proffered to suggest J.J. acted unpredictably before being struck, his actions were not deemed to be intervening acts that would have been unforeseeable to the Defendant. Moreover, a plaintiff parent cannot be held vicariously liable for the tort of an infant child while crossing the street, in the absence of any dangerous activity engaged in by the infant, simply due to the status of parent.
Accordingly, IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment on the issue of liability is GRANTED in its entirety, and Defendant's counterclaim seeking indemnification and/or contribution and first, fifth, seventh, and eighth affirmative defenses, sounding in contributory negligence, are STRICKEN. This action shall proceed to trial solely on the issue of damages.
E N T E R
HON. AARON D. MASLOW
Justice of the Supreme Court of the State of New York

Footnotes

Footnote 1:. In the context of matrimonial law, the failure to hold hands and otherwise engage in certain acts of intimacy was held not to rise to the level of misconduct necessary to support a finding of cruel and inhuman treatment (see Moss v Moss, 187 AD2d 775 [3d Dept 1992]. 

Footnote 2:. While case law is short on decisions concerning not holding hands, there are a fair number of ones in various legal contexts with respect to people who do hold or grasp hands (e.g., People v Rodriguez, 161 AD3d 523 [2d Dept 2018] [grasping hands of defendant car passenger while exiting car was permissible and minimally intrusive way to ensure safety of all police officers involved in lawful traffic stop, as it prevented defendant from accessing package on lap]; Vega v County of Westchester, 282 AD2d 738 [2d Dept 2001] [plaintiff injured while skating held not to escape consequences of assumption of risk doctrine by virtue of five other skaters holding hands in violation of rink rule]; De Gregorio v CBS, Inc., 123 Misc 2d 491 [Sup Ct, New York County 1984] [ broadcasting film showing male worker walking down public street holding hands with female worker did not violate privacy statute].
Footnote 3:. The Court construes this to include the counterclaim against Plaintiff Mother (see NYSCEF Doc No. 20, Answer at 4) inasmuch as the Notice of Motion appended a Proposed Order including the following sentence: "The Defendant's Counterclaim against, [MOTHER] and Affirmative Defenses pertaining to any comparative negligence and/or assumption of risk are dismissed. . . . (NYSCEF Doc No. 16, Proposed Order).
Footnote 4:. This concept exists in other jurisdictions too and is aptly described in O'Guin v Bingham County, 142 Idaho 49, 52, 122 P3d 308, 311 [2005], as follows:
"[I]n Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence per se." Sanchez v. Galey, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986). "A court may adopt 'as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation....' " Brizendine v. Nampa Meridian Irr. District, 97 Idaho 580, 586, 548 P.2d 80, 86 (1976) (quoting Restatement (Second) of Torts § 286 (1965)). "The effect of establishing negligence per se through violation of a statute is to conclusively establish the first two elements of a cause of action in negligence...." Slade v. Smith's Management Corp., 119 Idaho 482, 489, 808 P.2d 401, 408 (1991). "Negligence per se lessens the plaintiff's burden only on the issue of the 'actor's departure from the standard of conduct required of a reasonable man.' " Ahles v. Tabor, 136 Idaho 393, 395, 34 P.3d 1076, 1078 (2001) (quoting Restatement (Second) of Torts § 288B cmt. B (1965) ). "Thus, the elements of duty and breach are 'taken away from the jury.' " Ahles, 136 Idaho at 395, 34 P.3d at 1078 (quoting Prosser and Keeton on Torts 230 (5th ed.1984) ).

 In order to replace a common law duty of care with a duty of care from a statute or regulation, the following elements must be met: (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury. Ahles, 136 Idaho at 395, 34 P.3d at 1078 (citing Sanchez v. Galey, 112 Idaho 609, 617, 733 P.2d 1234, 1242 (1986)

This case posed a similar question regarding the supervision of minors, as two unsupervised children died playing in a landfill while walking home from school alone. The Court found that the landfill failed to abide by a statute requiring fencing to protect the public from potential dangers, which would have prevented the children from facing such dangers even if unsupervised.
Footnote 5:. While Thoma v Ronai (82 NY2d 736 [1993]) may appear to be contrary, this decision emanated from the pre-Rodriguez v City of New York era during which a plaintiff moving for summary judgment had to establish her own freedom from contributory negligence. As this is no longer the rule, a plaintiff struck while in a crosswalk with a pedestrian signal in her favor establishes entitlement to summary judgment on liability irrespective of her own possible comparative negligence (see Rodriguez v City of New York, 31 NY3d 312 [2018]; Hai Ying Xiao v Martinez, 185 AD3d 1014 [2d Dept 2020]).

Footnote 6:. For an extended discussion of this principle in another state see Stevens v Veenstra (226 Mich App 441, 443, 573 NW2d 341, 342 [Mich Ct App 1997]), which deals with a 14-year-old committing a tort while performing the inherently dangerous activity of driving. Although the Court focuses on the exception, it describes clearly the generally accepted reasonably prudent person standard when applied to children.
Footnote 7:. Vehicle and Traffic Law § 1151 (b) provides: "No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impractical for the driver to yield."
Footnote 8:. PJI 2:12 states:
 Negligence requires both a reasonably foreseeable danger of injury to another and conduct that is unreasonable in proportion to that danger. A person is only responsible for the results of his or her conduct if the risk of injury is reasonably foreseeable. The exact occurrence or exact injury does not have to be foreseeable; but injury as a result of negligent conduct must be not merely possible, but probable.
 
There is negligence if a reasonably prudent person could foresee injury as a result of his or her conduct, and acted unreasonably in the light of what could be foreseen. On the other hand, there is no negligence if a reasonably prudent person could not have foreseen any injury as a result of his or her conduct, or acted reasonably in the light of what could have been foreseen.
Footnote 9:. Depositions to inquire about damages are appropriate.